# Richmond

## COMMONWEALTH OF VIRGINIA AND VIRGINIA STATE BAR V. JONES & ROBINS, INCORPORATED, ET AL.

March 4, 1947.

Record No. 3155.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Abram P. Staples, Attorney General, Ralph T. Catterall* and *John G. May, Jr.,* for the appellants.

*Tucker, Mays, Cabell & Moore* and *Hunton, Williams, Anderson, Gay & Moore,* for the appellees.

Hudgins, J., delivered the opinion of the court.

The Commonwealth of Virginia, at the instance of the Council of the Virginia State Bar, instituted this suit, alleging that Jones & Robins, Inc., a corporation engaged in the real estate brokerage business, habitually prepared deeds, deeds of trust, mortgages and deeds of release—for which a minimum fee of $5.00 each was charged—in connection with the sale of real estate and the closing of real estate loans negotiated through the brokerage office; and that to that extent the brokerage firm was engaged in the illegal practice of law. The prayer of the bill was for a judgment declaring such activities to be within the definition of the practice of

law and for a permanent injunction prohibiting respondent from engaging in such practices.

Respondent, in its answer, admitted that it was licensed to conduct, and was engaged in, the real estate brokerage business; that, as an incident to the sale of real estate and the making of loans, it regularly prepared deeds, deeds of trust, mortgages and deeds of release, for which it charged the fees alleged; and that it intended to continue such activities "unless it is prevented from so doing by the action of some court of competent jurisdiction."

The Virginia Real Estate Association, a voluntary unincorporated body, organized and operating under a constitution and by-laws, was permitted to become a party defendant to the suit.

The first objection raised to the bill is that complainants are not authorized to bring this bill of complaint on behalf of "all other licensed attorneys of the Third District and of the Commonwealth of Virginia."

The suit was brought in the name of "The Commonwealth of Virginia, at the instance of the Council of Virginia State Bar, acting through the Third District Committee," and six named attorneys, "who sue on behalf of themselves and all other licensed attorneys of the Bar of the Third District and of the Bar of the Commonwealth of Virginia." The Virginia State Bar is an organization fully authorized to institute suits and other proceedings it deems necessary to enforce the rules and regulations of the integrated bar. As the Virginia State Bar was a complainant and conducted the litigation in the name of the Commonwealth of Virginia, we find no reversible error in the fact that unnecessary parties were named as complainants.

The dominant question presented is whether the preparation of deeds, deeds of trust, mortgages and deeds of release by duly licensed real estate brokers, in connection with the sale of real estate or the closing of real estate loans negotiated through the brokers' offices, constitutes the practice of law within this jurisdiction.

Prior to 1938, no official attempt had been made to formulate an all-inclusive definition of the practice of law. This fact did not prevent this court from declaring that certain acts or practices, stated in *Richmond Ass'n of Credit Men* v. *Bar Ass'n*, 167 Va. 327, 189 S. E. 153, constituted the illegal practice of law. It was held, in that case and in *Norfolk, etc., Bar Ass'n* v. *Drewry*, 161 Va. 833, 172 S. E. 282, that, inasmuch as an attorney is an officer of the court in the administration of justice, the court has inherent power to supervise his conduct, both in and out of court, to the extent of reprimanding him or even removing him from office for misconduct. It was said that the phrase, "practicing law," or its equivalent, "the practice of law," had a sufficiently definite meaning to be understood in both constitutional and statutory law without further definition. In the former case Mr. Justice Eggleston, speaking for the court at page 335, declared "that the courts have the inherent power, apart from statute, to inquire into the conduct of any person— whether an individual, a law agency, or a corporation—to determine whether he or it is usurping the functions of an officer of the court and illegally engaging in the practice of law and to put an end to such unauthorized practice where found to exist."

Since the publication of the decision in the two cases cited, the practice of law in Virginia has been defined. See 171 Va. xvii.* That part of the definition pertinent to the question under consideration reads:

*"The principles underlying a definition of the practice of law have been developed through the years in social needs and have received recognition by the courts. It has been found necessary to protect the relation of attorney and client against abuses. Therefore it is from the relation of attorney and client that any definition of the practice of law must be derived.

"The relation of attorney and client is direct and personal, and a person, natural or artificial, who undertakes the duties and responsibilities of any attorney is none the less practicing law though such person may employ others to whom may be committed the actual performance of such duties.

"The gravity of the consequences to society resulting from abuses of this relation demands that those assuming to advise or to represent others shall be properly trained and educated, and be subject to a peculiar discipline.

"Generally, the relation of attorney and client exists, and one is deemed to be practicing law, whenever he furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill.

"Specifically, the relation of attorney and client exists, and one is deemed to be practicing law, whenever—

\* \* \* \* \* \*

"(2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business."

Appellants contend that, under this definition, no person other than a lawyer may draw or prepare a deed, will, lease, contract or other instrument by which the legal rights of another to property are transferred, secured or otherwise affected; and that the preparation of such papers for another implies the possession and requires the use of legal knowledge or skill.

That fact, and the necessity for protection of society in its affairs and in the ordered proceedings of its tribunals, have developed the principles which serve to define the practice of law.

"Generally, the relation of attorney and client exists, and one is deemed to be practicing law, whenever he furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill.

"Specifically, the relation of attorney and client exists, and one is deemed to be practicing law, whenever—

"(1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.

"(2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.

"(3) One undertakes, with or without compensation, to represent the interest of another before any tribunal,—judicial, administrative, or executive,—otherwise than in the presentation of facts, figures, or factual conclusions, as distinguished from legal conclusions, by an employee regularly and bona fide employed on a salary basis, or by one specially employed as an expert in respect to such facts and figures when such presentation by such employee or expert does not involve the examination of witnesses or preparation of pleadings."

Appellees contend that a licensed realtor who prepares deeds for the sale of real estate or deeds of trust to secure loans negotiated by him is included in exception No. 2 of the definition, in that such deeds or deeds of trust are mere contracts "incident to the regular course of conducting a licensed business."

Numerous cases from other jurisdictions are cited in the briefs to support the respective contentions of the parties. Most of the cases and other authorities cited were studied and reviewed by both the committee of forty lawyers and members of the court before the definition of the practice of law was formulated and promulgated. A review of these authorities is unnecessary as both sides concede that the question must be determined by the construction of the language used in defining the practice of law in this jurisdiction.

The trial judge in an able and elaborate opinion reasoned that paragraph 2 of the definition by implication permits a realtor to draw "contracts incident to the regular course" of his business; that deeds of bargain and sale, release deeds and deeds of trust are "contracts," within the meaning of the definition; and that if the preparation of such instruments is in connection with a sale which a licensed realtor has negotiated, then these instruments are "incident to the regular course" of his business and may be prepared by him.

Assuming, but not deciding, that paragraph 2 impliedly *permits* those acts not thereby expressly *forbidden,* which the appellants earnestly insist that it was not designed to do, we can not agree with the reasoning and conclusion of the learned trial court.

It will be observed that paragraph 2 does not permit, even by implication, a layman to prepare "legal instruments of any character incident to the regular course" of his business. It *prohibits* him from preparing "legal instruments of any character" *"other than"* or except "notices or contracts incident to the regular course" of his business.

It is true that, technically speaking, deeds of bargain and sale, release deeds and deeds of trust (and the notes secured thereby) are "contracts." But they are not contracts

ordinarily incident to the business of a realtor. They are extraordinary contracts and are muniments of title to real estate.

A consideration of the background which prompted the formulation of the definition of the practice of law, the evils it was designed to prevent, and a brief review of the proceedings surrounding the formulation and promulgation of the definition, clearly demonstrate that one of the main purposes of the definition was to restrict the preparation of these important instruments to those who were authorized or licensed to practice law.

It was a matter of common knowledge among the members of the bar and the judges of our courts that many deeds which had been prepared by real estate agents and other laymen were defective and often resulted in costly litigation. This no doubt was due to the fact that most of these parties did not know or appreciate the legal effect of a deed. Titles to real property at times have been upset and in some cases the owner either lost his property or was compelled to fight a costly lawsuit all because of a defective deed prepared by an untrained layman. To eliminate these difficulties and afford a greater measure of protection to the public a demand arose to place the responsibility of preparing deeds upon lawyers who by proper training and experience are in better position to perform this important duty. In response to that demand this court was called upon to define the practice of law. This it did, after great and comprehensive effort and intelligent assistance from the leading members of the bar of the State. In formulating the present definition this court possessed a clear and express intent to so define the practice of law as to prevent real estate agents from continuing the practice of writing deeds.

The Supreme Court of Appeals of Virginia, pursuant to its inherent power and chapter 410 of the Acts of 1938 (Acts 1938, p. 771), adopted rules and regulations, defining the practice of law and prescribing a code of ethics governing professional conduct of attorneys, a code of judicial

ethics and other measures, by which the Bar of this State became integrated.

These rules and regulations were drawn and recommended for adoption by forty able and experienced attorneys, designated as the "Committee on the Integration of the Virginia State Bar," and composed of one attorney from each of the then thirty-four judicial circuits, elected by the attorneys practicing in that circuit, and six members from the State at large, appointed by this court. At the first meeting of this committee, held in Lynchburg on June 30, 1938, the responsibility for drafting the rules and regulations to integrate the Bar was divided among five committees of eight members each. The task of defining the practice of law was assigned to committee No. 1, composed of Ashton Dovell (then Speaker of the House of Delegates), Williamsburg; John C. Parker, Franklin; H. W. Walsh, Charlottesville; Guy B. Hazelgrove, Richmond; Charles E. Ford, Newport News; Stuart B. Campbell, Wytheville; James G. Martin, Norfolk; and Frank W. Rogers, Roanoke.

This subcommittee made its report to the other members of the Integrated Bar Committee on July 29, 1938, at a meeting held at Sweet Briar College. (See Journal of July 29, 1938, meeting, pp. 2-16.) Mr. Ashton Dovell, chairman of the committee, in presenting the report, stated: "It is a unanimous report. We have given the most careful consideration to the language, not only as a whole but to every thought expressed and embodied in the language which is used for the purpose of writing the definition which we believe is practical in its application, which will work no hardship, * * * .

"By Mr. Hall (C. M. Hall, of Williamsburg):

" * * * . I would like to know whether the committee specifically considered whether or not a real estate agent drawing deeds and options and deeds of trust is practicing law. * * * .

"By Mr. Dovell:

"Mr. Chairman, the question first with reference to the real estate agent or realtor, as it is defined under the statute.

"This committee feels that the drafting of deeds, which term includes trusts and mortgages and papers of that sort, conveyances in general, is the practice of law; that incident to and essentially a part of the business of real estate agent would be the matter which is usually handled by printed or prepared forms with blanks to be filled in appropriate with the matter in hand and the question of his taking a contract from an owner to sell at a given price or an offer from a prospective purchaser to buy at a given price, the letting of property, the collection of rent, the application of the proceeds to the maintenance and repair and to taxes, perhaps, and to other incidental expenses of upkeep and maintenance and the disposition of the residue, * * * , are things incidental to the real estate business and therefore, if you will observe in subdivision (2) in defining the practice of law, while it is not necessarily set up specifically and so earmarked, the language is 'One is deemed to be practicing law whenever * * * one undertakes, with or without compensation, to prepare for another legal instruments of any character.' Now, that excludes the deeds, deed of trust and mortgage papers, but steps over them to take care of the incidentals or matters incident to the business by saying 'other than notices' which would be notice to quit, or contract incident to the regular course of business he is licensed to conduct. .

"By Mr. Gordon:

"That will cover leases?

"By Mr. Dovell:

"And options to purchase and options to sell and it·covers a contract that I, as a real estate man, might present to you to constitute authority or a relationship of principal and agent between us for the purpose of my finding a purchaser for the property which you desire to sell, but it ceases there because that is the only limitation on the definition as far

as practicing law is concerned and it leaves papers of other characters within the purview of the contemplation of the practice of law."

Another member of the committee, Mr. James G. Martin, of Norfolk, in response to a question, said: "We thought the word 'contract' would not be construed to cover a deed of bargain and sale or deed of trust which is in a certain sense an executed contract. We therefore did not use the word 'executory contract' but just the word 'contract'. We intended to exclude deeds of bargain and sale and deeds of trust. We do not object to deeds of lease because we believe if the lease be under seal or not under seal that is so incidental to the real estate business that is not the practice of law and ought not to be included, although it should be under seal.

"BY MR. ADAMS (Mr. Allen?):

"Do you think that language is sufficiently strong to make that plain?

"BY MR. MARTIN:

"Personally I haven't any objection to making it better if it can be stated in better language. We are not at all wedded to this language. We think it is plain, as written, * * * .

*   *   *   *   *   *

"BY MR. WALSH:

" * * * . If there is an undertaking to draw deeds by a layman we think that is an abuse of the relation of attorney and client and should not be permitted, and I understand this does prevent and does treat as the practicing of law the preparation of a deed by a layman as a business."

No change in the language defining the practice of law, pertinent to the question under consideration, was suggested, and the report of subcommittee No. 1 was adopted.

A full report of the committee of forty and a stenographic copy of the journal of its meetings in due course were delivered to each member of the court. On September 6,

1938, at Staunton, the three members of the court committee made their report to the court, suggesting certain changes and amendments to the report of the committee of forty. In the court committee's report, it is stated: "While the definition of the practice of law, the rules, regulations, and organization are not perfect and perhaps not as any one member of the Court or any one lawyer would have stated them, they are the result of the conclusions of forty outstanding lawyers representing every section of the State, many of whom have been studying the integration of the Bar for a number of years. The journal of the meetings shows careful consideration of each phase of the subject and a willingness to accept any suggested change from the original draft which a majority of the members deemed advisable."

The court, in accepting the reports, ordered that they be released for publication in the newspapers and that 2,500 copies be printed in pamphlet form and distributed to the public at large. The closing paragraph of the order provided: "It is further ordered that leave be, and is hereby, given to any person interested in the subject to file in the office of the clerk of this court at Richmond, within thirty days from this date, written objections to our criticisms of said reports."

Real estate brokers, in person and by their attorneys, and others criticized and objected to various parts of the reports of the committees. Certain parties criticized the definition of the practice of law because it permitted licensed real estate brokers to give notice to tenants on termination of their leases, etc., and to prepare simple contracts and contracts of lease, which these critics claimed should be included in the practice of law.

The court, on consideration of the various objections and criticisms, adopted a suggestion of the late lamented Andrew D. Christian and included the following paragraph in the definition: "Generally, the relation of attorney and client exists, and one is deemed to be practicing law, whenever he furnishes to another advice or service under circumstances

which imply his possession and use of legal knowledge or skill." This amendment did not, nor was it intended to, change the line of demarcation intended to be drawn between the meaning of "legal instruments of any character" and "contracts incident to the regular course of conducting a licensed business."

The Supreme Court of Appeals of Virginia, by unanimous vote, adopted the committee's report, which necessarily included the construction placed by the Committee on the Integration of the Virginia State Bar on the language defining the practice of law.

In 1940, the then committee on the unauthorized practice of law of the Virginia State Bar, in response to a question on "the right of the agent to prepare certain documents relating to real estate," gave an advisory opinion in which it was declared "that the preparation of *contracts of sale and exchange,* and *options, leases,* deeds, and deeds of trust by real estate agents constitutes the unauthorized practice of law by such agencies, and can be, and should be stopped, if necessary, by appropriate injunction proceedings." (Italics supplied.) Opinion No. 14, Third Annual Report of Virginia State Bar, pp. 37, 41.

This part of the opinion made no distinction between "legal instruments of any character" and "contracts incident to the regular course of conducting a licensed business." Hence it is not surprising that, on review of this opinion, the Council of the Virginia State Bar (a majority of whom had served as members of the organization committee) modified opinion No. 14 and construed the language used in the definition in accord with the original intention of the authors —that is, that a real estate broker was not engaged in the practice of law when he prepared, drafted or used simple contracts of sale or contracts of lease as an incident to the regular course of the conduct of his business, but that the drafting of deeds, deeds of trust, mortgages and release deeds was not incidental to the conduct of his business and was in fact an activity included within the definition of the practice of law.

It is a matter of common knowledge that a large majority of licensed real estate brokers in the State accepted in good faith the stated line of demarcation between what is and what is not the practice of law and acted accordingly. It seems that some of the licensed brokers in the city of Richmond did not abide by the advisory opinion. This appears from the stipulation filed in the record: "Counsel for the complainants, and for Jones & Robins, Inc., and for Virginia Real Estate Association, respectively, stipulate and agree that there is no general custom uniform throughout the State of Virginia whereby real estate brokers are accustomed to prepare deeds and deeds of trust as an incident to the closing of sales or loans upon real estate made through the offices of such brokers. The custom varies in the various localities and varies within some of the localities. For example: In the City of Richmond there has been a general but not universal custom for real estate brokers to prepare such instruments; in the City of Norfolk there has been no such custom. In Roanoke and Martinsville the custom prior to the promulgation of the Integrated Bar Rules was for brokers to prepare such instruments. Since the promulgation of the Integrated Bar Rules real estate brokers in these communities customarily have not prepared such instruments."

When a real estate broker is properly authorized, he may, and frequently does, sign the contract of sale as agent of the owner—that is, the real estate broker ordinarily obtains from the owner a written contract authorizing him to sell, upon certain terms and conditions. He then obtains from the buyer a written contract to take the property upon the terms and conditions stated. These are simple contracts of sale. They need not be under seal. No charge is made for their preparation and they are the papers included in the words "contracts incident to the regular course of conducting a licensed business."

The deed or legal instrument by which title to real estate passes must be under seal and signed and acknowledged·by the owner and his consort, to which instrument the broker is not a party as agent or otherwise. It is quite true, as Mr.

Martin stated in his reference to the line of demarcation, that an indenture, a deed poll, is an executed contract. But it is more than a contract; it is a muniment of title and must become a matter of permanent record. Such instruments, in this sense, are not incidental to the conduct of a real estate brokerage business. The broker makes a separate and distinct charge for the preparation of each such instrument, which it seems he would not do if the preparation of such papers was a mere incident to the conduct of his business.

The rights of the seller and purchaser may be fixed and determined by the contract of sale, and a lease may, and frequently does, involve property of much value and may fix the rights of parties for a long period of time. Appellant contends that, for these and other reasons, it would be illogical to authorize real estate brokers to prepare such papers and to prohibit them from the preparation of ordinary deeds of bargain and sale and deeds of trust. This argument is clothed with some logic. However, the line of demarcation had to be drawn somewhere. The authors of the definition of the practice of law thought and said that the welfare of the public did not require that real estate brokers be prohibited from the preparation of all legal papers necessary to the sale of property; and that, in view of the custom which has developed in many sections of Virginia, it would be too great a hardship on such brokers to require them to have an attorney prepare options or contracts of sale.

The license of a real estate broker entitles him to lease or rent real estate for others. Usually, rental contracts are for limited periods and completed on printed forms originally prepared by attorneys. The broker secures the tenant and has him sign the lease, after which the broker collects the rent and accounts to the landlord. However, the ordinary and customary business of a real estate broker is to negotiate the sale or purchase of real property. His duty is completed and he is entitled to his commission when he has found a purchaser "ready, willing and able to take the property at the price and upon the terms fixed by the owner." See *Halsey* v. *Monteiro*, 92 Va. 581, 583, 24 S. E. 258; *Kramer*

v. *Blair*, 88 Va. 456, 13 S. E. 914; 2 Michie's Va. and West Va. Digest, Brokers, p. 348. Usually the instruments whereby title passes from the seller to the purchaser are not prepared, executed or delivered until after the title has been examined and approved by the attorney for the purchaser. As a practical solution of the question, it was deemed advisable to permit a real estate broker to prepare simple contracts of sale, options, leases, etc., and to prohibit him from preparing legal instruments whereby the legal title to property passes from the seller to the purchaser.

For the reasons stated, the decree of the trial court is reversed and the case is remanded with directions to the trial court to enter a decree declaring that the preparation of deeds, deeds of trust, mortgages and deeds of release by real estate brokers constitutes the illegal practice of law, and to enjoin Jones & Robins, Inc., from engaging in such unauthorized practices.

*Reversed and remanded.*

HOLT, C. J., dissenting.

The defendant is charged with the unauthorized practice of law. To sustain that charge these facts are set out in the bill:

"6. The respondent is and for some years has been engaged in the real estate business; that as a part of the said business, it regularly prepares for others deed and deeds of trust.

"(a) That on the 19th day of June, 1944, the respondent prepared a deed of bargain and sale, wherein Robert L. Gowen and Lillie Jones Gowen conveyed certain real estate to Franklin Davis Corporation, the said deed being filed in the clerk's office of the Chancery Court of the city of Richmond on July 5, 1944, it now bearing clerk's number 94 for the month of July, 1944, but not yet recorded.

"(b) That on the 1st day of July, 1944, the respondent prepared a deed of bargain and sale, wherein Franklin Hold-

ing Corporation conveyed certain real estate to George N. Minson and Maud C. Minson, the said deed being filed in the clerk's office of the Chancery Court of the city of Richmond on July 5, 1944, it now bearing clerk's number 95 for the month of July, 1944, but not yet recorded.

"(c) That on the 1st day of July, 1944, the respondent prepared a deed of trust, wherein George N. Minson and Maud C. Minson conveyed certain real estate to L. C. Jones and Franklin Robins, trustee, to secure the holder and/or holders of notes described therein the sum of $928.00, the said deed of trust being filed in the clerk's office of the Chancery Court of the city of Richmond on July 5, 1944, it now bearing clerk's number 96 for the month of July, 1944, but not yet recorded."

Such practice is a crime, made so by Code, section 3422. Since it is a crime, it must be proven, as other crimes are proven—beyond a reasonable doubt.

No warrant or indictment has issued, but we have been asked by a declaratory judgment to say that a certain practice is unlawful although it is made so by statute; and in this wise petitioners have sought to detour the hazard of a jury trial and a judgment if for the defendant would be unappealable. As a matter of fact, appellants here are the Commonwealth of Virginia and the Virginia State Bar.

In Code, section 3430a, this court was authorized to prescribe, adopt and promulgate rules and regulations:

"(a) Defining the practice of law,—

"(b) Organizing and governing an association to be known as the Virginia State Bar composed of the attorneys at law of this State, to act as an administrative agency of the Supreme Court of Appeals of Virginia for the purpose of investigating and reporting the violation of such rules and regulations as are adopted by the Supreme Court of Appeals under this act to a court of competent jurisdiction for such proceedings as may be necessary, and requiring all persons practicing law in this State to be members thereof in good standing."

That was done.  They are set out in Virginia Reports, 173, beginning at page xviii.  Their caption reads:

"RULES
For Integration of The
VIRGINIA STATE BAR
Adopted and Promulgated
By The
Supreme Court of Appeals of Virginia
October 21, 1938
Amended February 17, 1939"

These rules originated with the Integrated Bar and were adopted and promulgated by this court.  The relation of client and attorney is declared to exist whenever these conditions obtain:

"(1)  One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.

"(2)  One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices of contracts incident to the regular course of conducting a licensed business."

And it is the Integrated Bar which is now in substance asking that its own rules be construed and enforced.  Under well recognized principles, if there be any doubt as to their meaning, that burden the Integrated Bar must bear.

The Legislature and this court has the power to define unauthorized practice of law.  But that power itself is limited by our Bill of Rights.  Such regulations as are adopted must deal with the practice of law.  Neither of them could by fiat declare that to shuck corn is to practice law.

The Integrated Bar has some of the indicia of a closed shop.  We are all members of the union, and as such we are the ultimate arbitrators.  This responsibility is great but unavoidable.  We are to make haste slowly—*festinamus lente*

—and should give such judgment as should be expected from a jury of just men and realtors whose single purpose was to do what is right.

Because this case turns upon what is and is not unauthorized practice of law, I recopy this definition:

"(a)   One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, *other than notices or contracts incident to the regular course of conducting a licensed business.*"   (Italics supplied.)

That deed and deeds of trust are contracts is too plain for argument.   They often contain covenants of most important and far-reaching effect, both upon the grantor and grantee.

The chancellor below, in the course of his written opinion, well said:

"If a deed is a 'contract,' and, if under the circumstances recited the drafting of it is 'incident' to the regular course of conducting the real estate business, then it necessarily follow shat the realtor is within his rights in preparing the same.

"In section (2) the court makes no distinction between kinds of contracts.   The only condition imposed is that it be incident to the course of conducting the business.   It does not say simple contracts or formal contracts, bilateral contracts or unilateral contracts, sealed contracts or unsealed contracts.   But it does say contracts, necessarily meaning all contracts, incident to the regular course of conducting the business.   It is as forthright and definite a statement of what the court means as can be couched in a short, clear and direct sentence.   The succinct statement of Mr. Justice Holt, in *Title Ins. Co.* v. *Howell,* 158 Va. 713, at p. 718, 164 S. E. 387, seems here appropriate.—'Ambiguities may be cleared away and weasel words explained, but that which is clear needs no explanation.' "

Indeed, all that is said might be studied with profit.

Two controlling exceptions are to be noted:   Regular employees are exempt from these restrictions, as are contracts incident to the regular course of conducting a licensed business.   Since the defendant is a corporation, it can only

act through its agents; but more important still is the provision that contracts incident to the regular course of conducting a licensed business are excluded. What are contracts incident to the regular course of conducting a licensed business?

The Century Dictionary described them as "matters subordinate; casual; incidental * * * subordinate to a principal thing." Webster's New International Dictionary describes them as something "appertaining to something° else, though not an essential part of it."

Since this qualification was in substance drafted by those who seek to enforce it, it should be liberally construed. But whether construed liberally or not, it is perfectly plain that the main business of the defendant is to buy and sell real estate, and that the writing of deeds therefor and placing of mortgages thereon are subordinate to the main purpose for which it was chartered and licensed.

Said sub-section (2), which tells us that contracts incident to a licensed business are excluded, governs and is amply supported by authorities.

"General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * " *Ginsberg & Sons* v. *Popkin*, 285 U. S. 204, 52 S. Ct. 322, 76 L. Ed. 704, 705.

But beyond all peradventure, in the very language of the rule itself, extra-curricular activities, which are but "incidents" to a legitimate major activity for which the defendant was chartered and licensed, are to be excluded.

Under modern conditions neither professions nor business can function successfully in a straight-jacket. As the court well said in *Cowern* v. *Nelson* (1940), 207 Minn. 642, 290 N. W. 795:

"The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do every day in their practice

may also be done by others without wrongful invasion of the lawyers' field. We think that ordinary conveyancing, part of the every day business of the realtor, is within that region and consequently something of which the legal profession cannot under present circumstances claim that the public welfare requires restraint by judicial decree."

Hospitals are something more than boarding houses. Nurses prepare charts which tell at a glance the progress of patients up or down. Technicians tell us the color of their blood. All of this is of great value to physicians. They take their art from empiricism into the atmosphere of science, yet no court, State or Federal, with or without a statute, has ever held that these instrumentalities are practicing medicine.

The educational qualifications of doctors is certainly not less exacting than those required by lawyers, while public interest touching qualifications of doctors is not less vital than that which attaches to lawyers.

In *Stuart Circle Hospital Corp.* v. *Curry*, 173 Va. 136, 3 S. E. (2d) 153, 124 A. L. R. 176, Mr. Justice Spratley said:

"The object, aim and purpose of a hospital,—the reason for its establishment and operation, is to render and perform medical treatment and nursing of a skilled character. It is the facility for affording the patient a higher and greater degree of nursing and medical attention than would be ordinarily possible outside of a hospital that makes it desirable. The opportunity to render such service enables a hospital to make a higher charge than a hotel or boarding house. The desirability of securing the needed service provides inducement for the patient to enter the hospital. The patient comes to the hospital for advice, aid and treatment,— not to give either."

One may ask his bank for a letter of credit. Many lawyers have never seen one. The bank, instead of calling in a lawyer, calls upon an expert member of its own staff to draft it. It is not contended that the bank or this staff member are practicing law.

A cotton mill at Danville, in the purchase of raw materials

and in the sale of its products, enters into unnumbered contracts, many of which no lawyer ever saw. It is not practicing law.

' We may come nearer home. Many lawyers, particularly in rural communities who have found their clients involved, thought it well that they convert their assets into cash and pay their debts, and have so advised them. Sometimes it might be necessary to sell their lands. In such circumstances, and as incident to the major purpose for which they were retained, they might aid them in finding purchasers. No court, State or Federal, with or without a statute, has ever undertaken to penalize them for doing an unauthorized business as real estate agents.

Doctors and dentists daily tread upon each other's heels.

In *Lowell Bar Ass'n* v. *Loeb* (1943), 315 Mass. 176, 52 N. E. (2d) 27, is a case in which it was charged that those who made out Federal income tax returns were practicing law. The court said:

"There are instruments that no one but a well trained lawyer should ever undertake to draw. But there are others, common in the commercial world, and fraught with substantial legal consequences, that lawyers seldom are employed to draw, and that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen, as has already been shown. The actual practices of the community have an important bearing on the scope of the practice of law."

The case of *Commonwealth* v. *Rucker*, Corporation Court of Buena Vista, decided by Judge Beverly Berkeley of the Law and Chancery Court of the City of Roanoke, July 7, 1941, and found in Third Annual Report of the Virginia State Bar year 1941 at page 48, sheds a flood of light upon this case.

Mr. Rucker was clerk of the circuit court of Buena Vista and prepared for pay deeds, deeds of trust, wills, contracts, homestead deeds; he examined titles, furnished abstracts thereof, together with opinions upon their validity. He was charged with the unauthorized practice of law and was

rightly convicted. He was not a lawyer and not a licensed real estate broker. Paragraph 2 of the final decree in that case reads:

"That the defendant, not being a duly licensed attorney at law, customarily prepared for others deeds, deeds of trust, wills, contracts, homestead deeds and other legal instruments, examines titles, furnishes abstracts of title, and renders opinions upon the validity of the title to real estate, *other than as a regular employee acting for his employer and other than notices or contracts incident to the regular course of conducting a licensed business.*" Italics supplied.

He would not have been convicted for doing some of the things which he did had he been a regular employee acting for his employer; and he would not have been convicted had he been a licensed real estate broker and had he prepared a deed of bargain and sale on the 19th day of July, 1944, as incident to the business of a real estate broker, had he been such so chartered and licensed. For the same reason, he would not have been convicted of preparing the deed of trust executed as we have seen on July 1, 1944.

In passing, it is interesting to note that the title to Mr. Rucker's case runs *Commonwealth* v. *Rucker.* Had Mr. Rucker won, there would have been no appeal, and, as heretofore noted, that hazard in the instant case was detoured by joining individuals with the Commonwealth as complainant.

The net result of it all is this: Businesses and professions now overlap each other, and each may do those things which are ancillary to and reasonably necessary in the successful prosecution of their several callings.

All that defendant has done is set out in some detail in our Code, chapter 209. We have never charged that Federal income tax experts are practicing law. Their work is immensely more complicated than executing a deed of bargain and sale or a trust deed securing unpaid purchase money.

Under modern conditions, callings, and particularly professional callings, do, at times, incidentally trench upon each

other and overlap. Real estate agents, as but incident to the purpose for which they are chartered and licensed, do some things which might be done equally well by lawyers; and lawyers, in their turn, do things incidental to their profession which might have been left to real estate agents.

Dissenting opinions may serve as a safety valve. All too often they are but a voice crying in the wilderness—*vox et praeterea nihil*—gone with the wind, as have been many other worthy efforts.

SPRATLEY, J., concurs in this dissent.