# CIRCUIT COURT OF THE CITY OF RICHMOND

William E. Fears et al.

v.

Virginia State Bar et al.

March 1, 2000

Case No. LE-1283-3

BY JUDGE T. J. MARKOW

The parties appeared on Complainant William E. Fears Amended Petition for Declaratory Judgment and Co-complainant Virginia Real Estate Attorneys League's (VAREAL) Motion for Summary Judgment and the Commonwealth of Virginia's Demurrer, Plea of Sovereign Immunity, and Motion to Strike or in the Alternative, Motion for Summary Judgment, and memoranda were received and argument was heard. Additionally, the court considers a memorandum filed in support of the Commonwealth's position by the Coalition for Choice in Real Estate Closings as *amicus curiae*. Notwithstanding a long history of opposing nonlawyer involvement in real estate closings, the Defendant Virginia State Bar announced that it stood neutral to the cause and failed to participate.

The case originally came as a declaratory judgment action brought by Co-complainant Fears, an active member of the Virginia State Bar in Accomac, Virginia, whose legal business regularly includes real estate practice. After a hearing, the court entered an order permitting intervention by Virginia Real Estate Attorneys League, known as VAREAL, a party plaintiff. Upon hearing that VAREAL would offer no further evidence, the court accepted the organization's brief. Complainants seek a judgment declaring Va. Code

§§ 6.1-2.19 through 6.1-2.29, known as the Consumer Real Estate Settlement Protection Act or CRESPA, unconstitutional.

## The Challenge to RESARA

As an initial point of contention, VAREAL assumes in a footnote that CRESPA was amended by the Real Estate Settlement Agent Registration Act, Va. Code §§ 6.1-2.30 *et seq.*, aptly referred to as RESARA. Thus, VAREAL asserts that a challenge to RESARA is also properly before the court.

The Attorney General objects to the characterization noting that RESARA is contained not only in separate sections of the Code from CRESPA, but also in a separate chapter. The argument continues that RESARA is separate and distinct in the Virginia Code from CRESPA. Thus, RESARA is not properly before the court because it is not specifically challenged by Complainants pleadings.

The court notes that the Amended Petition for Declaratory Judgment seeks a ruling solely on CRESPA as amended. Therefore, if RESARA were an amendment to CRESPA, the issue of that Act's constitutionality would properly be before the court. However, RESARA, appearing in a separate chapter with a separate heading, is not an amendment to CRESPA and is, therefore, not properly at issue in this case. That CRESPA and RESARA appear under the same title does not show the latter to be an amendment as the title includes over twenty other chapters, regulating a variety of financial issues.

## Description of CRESPA

CRESPA permits nonlawyers to conduct real estate closings. It regulates the licensing and oversight of real estate settlement agents, including lawyers, to allow them to perform escrow, closing, or settlement services as expressly defined under the Act. *See* Va. Code Ann. §§ 6.1-2.19 to 6.1-2.29 (1950).

Without repeating all that is covered in the multiple sections of the Act, the court notes that the Act requires such agents to carry malpractice insurance, post fidelity and surety bonds, and maintain escrow accounts in accordance with the statute's instructions and with general fiduciary concerns. *See* Va. Code §§ 6.1-2.21, 6.1-2.23 (1950). The statute also obliges those who act as agents to maintain records of each settlement for a minimum of five years after each settlement is completed and to submit requested information to the Virginia State Bar. *See* Va. Code §§ 6.1-2.24, 6.1-2.26(A) (1950). The State Bar, in consultation with the Virginia State Corporation Commission and

the Virginia Real Estate Commission, is designated to establish, adjudicate, and enforce further regulations for settlement agents. *See* Va. Code §§ 6.1-2.26(B), (C), (D) (1950). Penalties for non-compliance with the statute are defined. *See* Va. Code § 6.1-2.27 (1950). Finally, the Act commands all settlement agents operating in the Commonwealth before the Act's promulgation to comply with its licensing and account management requirements. *See* Va. Code § 6.1-2.29 (1950).

Complainant Fears incorporated into the Amended Petition for Declaratory Judgment a brief written by Roger G. Hopper, a member of the Virginia State Bar. The brief was originally filed in an earlier action brought in the Supreme Court of Virginia.

First, the court deals briefly with Complainants' claims raised in the Amended Petition for Declaratory Judgment and in Mr. Hopper's brief, which argues that CRESPA violates the Special Legislation clause of the Virginia Constitution. Next, it will address Complainant Fears' arguments that CRESPA violates his rights under the Due Process clause of the U.S. Constitution found in the Fifth Amendment as applied to the states via the Due Process clause of the Fourteenth Amendment, and the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution. The court continues with an analysis of Complainants' claims that CRESPA violates the Separation of Powers Doctrine grounded in the Virginia Constitution. Finally, the court recognizes the impact of Unauthorized Practice of Law Opinion No. 183, which was approved by the Supreme Court with a postponed effective date.

### The Challenge That CRESPA is Special Legislation

First, Complainant argues that CRESPA is special legislation and invalid under Section 14 of Article IV of the Constitution of Virginia, and more specifically, under paragraphs 3 and 18 of that section. The clause and relevant paragraphs state:

> The General Assembly shall not enact any local, special, or private law in the following cases ....
>
> (3) Regulating the practice in, or the jurisdiction of, or changing the rules of evidence in any judicial proceedings or inquiry before the courts or other tribunals, or providing or changing the methods of collecting debts or enforcing judgments or prescribing the effect of judicial sales of real estate ....

(18) Granting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.

That section is meant to prevent inequality, discrimination, and favoritism in the laws. *See Benderson Devel. Co. v. Sciortino*, 236 Va. 136 (1988). The clause does not prevent the General Assembly from regulating professions completely. *See generally King v. Neurological Injury Comp. Prog.*, 242 Va. 404 (1991).

CRESPA applies equally to all persons and jurisdictions within the Commonwealth and does not define the practice or rules of any single or special group. The statute also does not give any one person or entity or any special group of persons or entities a privilege that is not available to all who are similarly situated. The Special Legislation clause is not implicated here.

### The Challenge That CRESPA Violates the Due Process Clause of the Fifth Amendment to the United States Constitution

Similarly, Complainant Fears argues that CRESPA deprives him of a property right to practice law by imposing upon him added costs of an additional license to act as an agent in a real estate closing. Thus, Fears asserts that CRESPA violates the Due Process clause of the Fifth Amendment as applied to the states by the Fourteenth Amendment to the Federal Constitution.

In opposition, Defendants note Va. Code § 6.1-2.19(B), stating CRESPA's purpose is to:

authorize existing licensing authorities in the Commonwealth of Virginia to require persons performing escrow, closing, or settlement services to comply with certain consumer protection safeguards relating to licensing, financial responsibility, and the handling of settlement funds.

Defendants argue that the Act is rationally related to this purpose and that the Act does not violate Complainant Fears' constitutional rights.

"Substantive due process measures the reasonableness of a statute against the legislature's power to enact the law." *King*, 242 Va. at 412 (citing *Duke v. County of Pulaski*, 219 Va. 428, 437-38 (1978); *Board of Supervisors v. State Milk Comm'n*, 191 Va. 1, 8-9, *appeal dismissed*, 340 U.S. 881 (1950); *Finney v. Hawkins*, 189 Va. 878, 886 (1949); *Stickley v. Givens*, 176 Va. 548, 560 (1940)). "Legislation which does not affect a constitutionally protected status such as a fundamental right will be upheld against a due process

challenge if such legislation is rationally related to a legitimate legislative goal." *See id.* at 412 (*citing Weinberger v. Salfi*, 422 U.S. 749, 771-72 (1975); *Etheridge v. Medical Ctr. Hosps.*, 237 Va. 87, 98 (1989)).

The goal of CRESPA is to provide consumer protection while authorizing persons to handle real estate closings for parties to a sale of certain types of property. *See* Va. Code § 6.1-2.19 (1950). Fears' status as an attorney with a real estate practice does not implicate a constitutional protection of a fundamental right relevant to this inquiry. Furthermore, CRESPA, as an authorization for agencies to license and regulate persons who handle real estate sales and closings, is rationally related to the state's purpose in protecting consumers who buy and sell real estate in the Commonwealth.

"The Due Process Clause imposes only broad limits, not exceeded here, on the exercise by a State of its authority to regulate its economic life, and particularly the conduct of the professions." *Friedman v. Rogers*, 440 U.S. 1, 18, n. 19 (1978) (*citing Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978); *North Dakota Pharmacy Bd. v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 164-67 (1973); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487-88 (1955); *and comparing Weinberger v. Salfi*, 422 U.S. at 767-74 (1975)). Thus, the court does not find that CRESPA has violated Complainant Fears' rights under the Fifth Amendment to the Federal Constitution.

### The Challenge That CRESPA Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

Complainant Fears and Mr. Hopper as *amicus* also argue that CRESPA violates the Fourteenth Amendment to the Federal Constitution. They assert that the Act burdens attorneys who conduct closings involving residential dwellings of four units or less, but immunizes attorneys who conduct closings involving five units or more.

Section one of the Fourteenth Amendment states in relevant part that no state shall "deny to any person … the equal protection of the laws." Where the challenged classification neither infringes upon a fundamental right nor creates a suspect class, the court inquires whether the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose. *See King*, 242 Va. at 411; *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196 (1983).

As stated above, the articulated purpose of CRESPA is to promote consumer protection. Also, Fears has not shown that the Act adversely affects his federal rights. Moreover, the court is not convinced that CRESPA separates lawyers into two classes or that those classes are suspect and, hence,

deserve more intense scrutiny of this regulation. Thus, the court does not find a violation of the Equal Protection clause here.

### The Challenge That CRESPA Defines the Practice of Law and Violates the Separation of Powers Doctrine of the Constitution of Virginia

The Attorney General argues that CRESPA does not define the practice of law. Citing the Act's statement of purpose at Va. Code § 6.1-219, quoted above, the Attorney General asserts that the General Assembly did not intend to define the practice of law, but merely to promote consumer protection in real estate sales.

The argument continues that the Act expressly defines escrow, closing, or settlement services as administrative and clerical and not as the practice of law. Therefore, as the reasoning goes, the Act, on its face, does not define the practice of law.

Although the Attorney General's position may be grounded in a desire of the General Assembly not to define the practice of law, the court finds the position untenable. The Supreme Court has stated, "Under the distribution of powers by the Constitution, it is the function of this court to interpret and not to enact laws." *Temple v. City of Petersburg*, 182 Va. 418, 423 (1944) (*quoting Fairbanks, etc., Co. v. Cape Charles*, 144 Va. 56, 63 (1926)). Embedded within the Virginia Supreme Court's reasoning is that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803); see also *Plaut v. Spendthrift Farm*, 514 U.S. 211, 222-23 (1995).

The Judiciary says what the law is in light of and, at times, notwithstanding the conduct of the other coordinate branches of government; such a separation of powers is the hallmark of our constitutional system and the cornerstone of our independent judiciary. Thus, the court is not confined in this case to the General Assembly's characterization of the activities of escrow, closing, or settlement services as administrative and clerical, especially when the issue is whether those services amount to the practice of law.

Defining and supervising the practice of law is encompassed in the fundamental, inherent power of the Supreme Court of Virginia. *See* Rules of S. Ct. of Va., Pt. 6, § 1 (Intro.); *see also Richmond Ass'n of Credit Men, Inc. v. Bar Ass'n of the City of Richmond*, 167 Va. 327, 335 (1937); *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 33, 36-37 (1947); *Button v. Day*, 204 Va. 547, 553 (1963); *Blodinger v. Broker's Title, Inc.*, 224 Va.

201, 205 (1982); *Rahbaran v. Rahbaran*, 26 Va. App. 195, 203-04 (1997). While the matter is addressed by rule and statute, this Court has the inherent power, apart from statute or rule, to inquire into the conduct of any person to determine whether that individual is usurping the functions of an officer of the court and illegally engaging in the practice of law and to put an end to such unauthorized practice where found to exist. *Rahbaran*, 26 Va. App. at 203-04 (1997) (quotations omitted); see also *Richmond Ass'n of Credit Men*, 167 Va. at 335-36; *Blodinger*, 224 Va. at 205. Important to the maintenance of public confidence in the Judiciary is an explanation of the source of the branch's inherent power.

*Inherent Power of the Court to Define and Regulate the Practice of Law*

Although others have noted that the inherent power of the courts is derived from a variety of sources, *see, e.g., Eash v. Riggins Trucking, Inc.*, 757 F.2d 557 (1985); Joyce Palomar, *The War Between Attorneys and Lay Conveyancers — Empirical Evidence Says Cease Fire!*, 31 Conn. L. Rev. 423 (1999); and Comment, *Too Many Hands in the Cookie Jar: The Unauthorized Practice of Law by Real Estate Brokers*, 75 Ore. L. Rev. 889 (1996), the inherent power to regulate the Bar and the practice of law begins with the express terms of the Constitution of Virginia, which states:

> The judicial power of the Commonwealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish.

Va. Const., art. VI, § 1 (last amended November 5, 1996). As head of the Judiciary, the Court defines and regulates the practice of law through its rules and through its agency, the Virginia State Bar. *See Jones & Robbins*, 186 Va. at 32; *see also* Va. Code § 54.1-3910 (1950).

Power granted by the Constitution flows from the people by their express or implied assent. *See Baker v. Carr*, 369 U.S. 186, 223 (1962), citing Ogg, *English Government and Politics*, 273-74 (2d ed. 1936); *see also Hawk v. Smith*, 253 U.S. 221, 230 (1920). The Court and its subordinate tribunals have the inherent power, in the absence of and despite statutes, to exercise the judicial power of the Commonwealth granted to the Court by the Constitution of Virginia because that power comes directly from the people and does not first flow through the General Assembly. The necessary and essential judicial powers of the Court, i.e., the inherent power, cannot be expanded and

contracted by an act of either or both the Executive or the Legislature except to the extent allowed by the Constitution. In this sense, judicial power does not mean jurisdiction, but the power to administer the judicial system. *Cf. Alden v. Maine*, 526 U.S. --- (No. 98-436) (June 23, 1999) (using the term judicial power interchangeably with the term jurisdiction).

Notwithstanding the General Assembly's declaration in Va. Code § 54.1-3910 that the Supreme Court may organize a state bar and use it as an agency to assist with rulemaking and enforcement, the Court promulgated the Unauthorized Practice Rules and Considerations pursuant to the Court's inherent power, rather than expressly by the General Assembly's act. *See* R. of S. Ct. of Va., Pt. 6, § 1 (Intro.) (January 1, 2000). Our system of justice requires persons who represent the interests of others to be charged with a great responsibility, not only to achieve the best result for their respective client, but also to maintain the dignity and integrity of the Judiciary. *See generally id.* Therefore, the Court has burdened those wishing to represent others with the educational, ethical, and fee requirements necessary to become and remain members of the Bar. *See generally* R. of S. Ct. of Va., Pt. 6, § 4 (January 1, 2000). Hence, when we call an attorney an officer of the court, we are accurately describing a status and not merely applying a courtesy designation.

Prior to and after admittance, each member is well-informed that he or she is an officer of the court with profound duties to the tribunal which, if breached, become the basis for revocation of the privilege to practice, fines, and potential imprisonment. *See generally id.* at § 13-13.2. Moreover, disciplinary action includes a stigma uneasy for many to overcome, which adds a dimension of deterrence.

Lawyers independently further the governmental interests of the Judiciary by representing the interests of their clients, themselves, and the justice system in all actions they take regardless of compensation. These well-known obligations run at any time of day and are essential to the support of the rule of law in the Commonwealth. Without inherent power to regulate those individuals to ensure the integrity of the system, the Court's power would become meaningless. With the court's power to define the practice of law firmly established, the next step in the present inquiry is whether CRESPA, in fact, authorizes agents to practice law.

### CRESPA's Impact on the Definition of Law

The parties argument focused the issue to whether activities defined under Va. Code § 6.1-2.20 as "[e]scrow, closing, or settlement services" are, in fact,

the practice of law. Complainants argue that, if the activities are, the Act as a whole is a usurpation by the General Assembly of the Supreme Court's inherent, core power to regulate the practice of law. Defendant and *Amicus* contend that, if the court finds certain activities under the section to be the practice of law and the court finds that the General Assembly has usurped the Court's power to regulate those activities, then this court is duty bound to strike only those activities which are constitutionally intolerable and leave the rest of the Act in place. The court begins with the text.

The Act's definition of "[e]scrow, closing, or settlement services" at Va. Code § 6.1-2.20 reads:

> the administrative and clerical services required to carry out the terms of contracts affecting real estate. These services include, but are not limited to, placing orders for title insurance, receiving and issuing receipts for money received from the parties, ordering loan checks and payoffs, ordering surveys and inspections, preparing settlement statements, determining that all closing documents conform to the parties' contract requirements, setting the closing appointment, following up with the parties to ensure that the transaction progresses to closing, ascertaining that the lenders' instructions have been satisfied, conducting a closing conference at which the documents are executed, receiving and disbursing funds, completing form documents and instruments selected by and in accordance with instructions of the parties to the transaction, handling or arranging for the recording of documents, sending recorded documents to the lender, sending the recorded deed and the title policy to the buyer, and reporting federal income tax information for the real estate sale to the Internal Revenue Service.

The court's inquiry begins by dividing the activities enumerated in Va. Code § 6.1-2.20 into two categories, those which are the practice of law and those which are not. As explained above, the General Assembly's characterization of the list of activities in Va. Code § 6.1-2.20 as administrative and clerical is not controlling on this issue.

Where an activity is challenged as the unauthorized practice of law, the court looks to the Supreme Court's definition of the practice of law set forth so many years ago. *See generally Jones & Robins*, 186 Va. 30. That definition states in relevant part:

[One] is deemed to be practicing law, whenever:

(1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.

(2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.

(3) One undertakes, with or without compensation, to represent the interest of another before any tribunal ....

R. of S. Ct. of Va., Pt. 6, § 1, 216 Va. 941, 1062-63 (1976); R. for Integ. of Va. State Bar, 171 Va. xvii-xviii (1938); *see also Jones & Robins*, 186 Va. at 33-34.

In light of the Court's reasoning in Jones & Robins, the correct analysis is to identify the challenged activity and determine whether it falls into one of the three categories set forth in the Court's definition of the practice of law. *See generally* 186 Va. 30. Of course, if an activity does fall into at least one such category, then the activity is the practice of law. *See generally id.* Although the committee reports adopted along with the definition of the practice of law might be helpful, the court can reach a decision here using the plain meaning of the Supreme Court's definition.

That none of the tasks in Code § 6.1-2.20 touch upon the representation of a party before a tribunal is elementary. Therefore, the court confines the analysis to the first two categories in the Supreme Court's definition.

### *Application of the Supreme Court's Definition of the Practice of Law to CRESPA*

Preliminarily, activities in Code § 6.1-2.20 that clearly are not the practice of law are placing orders for title insurance, receiving and issuing receipts for money received from the parties, ordering loan checks and payoffs, ordering surveys and inspections, setting the closing appointment, receiving and disbursing funds, sending recording documents to the lender, and sending the recorded documents and the title policy to the buyer. These activities do not require the application of law to fact, do not necessarily involve the giving of legal advice, and, at most, require the creation of documents which, in light of *Jones & Robins*, are simple and incidental to the regular business of real estate brokers. The court deals with each of the remaining closing activities of Code § 6.1-2.20 in turn.

First, the preparation of settlement statements does not amount to the practice of law. Preparation of the statement is akin to preparation of an itemized bill or an accounting for the parties to the real estate sale. The creation of the document does not require special legal training and does not set the rights of the parties. Thus, preparing settlement statements is not the practice of law.

Second, determining that all closing documents conform to the parties contract requirements necessarily requires the skill to construe contract language to ensure that all documents denoting title, insurance, and other rights are handled in the manner intended by the parties. The skill also requires knowledge of the proper method for transfer of title in any of the forms available under Virginia law and the language needed to establish the transferee's desired status given the state of title prior to transfer. That the activity falls within the practice of law as defined by the Supreme Court is inescapable. Therefore, determining that all closing documents conform to the parties contract requirements is the practice of law.

Third, following up with the parties to ensure that the transaction progresses to closing is a vague grant and does not necessarily involve the giving of legal advice. However, the court is concerned with the language that the General Assembly has chosen. Therefore, to the extent which ensuring progression of the transaction involves either the communication of legal advice by the person or entity acting as a closing agent or the preparation of legal documents not incidental to the agent's business, it would be the practice of law. The court can provide no clearer statement without more concrete facts, and a finding as to this activity would be inappropriate.

Fourth, ascertaining that the lenders instructions have been satisfied raises a similar concern as that of determining the conformity of closing documents to the parties contract discussed above. Loan documents involve minute detail which must be followed in order to assure that title to property passes and that the lender obtains the proper legal status, primarily with respect to the obligations secured by the property. The activity necessarily involves the knowledge and application of contract, property, and other commercial law which, when completed by a real estate closing agent, are not within the scope of a regular employee's work for his employer. Therefore, ascertaining whether the lender's instructions have been satisfied is the practice of law.

Next, the Act would allow agents to conduct closing conferences at which the documents are executed. The plain meaning of the statute amounts to an administrative task and does not involve either the application of law to facts or the creation of a legal instrument. Although the situation raises a serious concern that legal advice may be given at such a conference, such questions

may be referred to an available attorney. The Act does not suggest that conducting the conference also means the agent may give legal advice, but merely may guide the execution of documents. Thus, the court cannot determine that the activity is the practice of law. As with the third item in this series, the matter is properly addressed on a case-by-case basis.

Completing form documents and instruments selected by and in accordance with instructions of the parties to the transaction is also not a clear a case. The court looks to *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30 (1947), for guidance to decide whether creating instruments surrounding real estate dealings constitutes the practice of law. In *Jones & Robins*, the Commonwealth and the Virginia State Bar sought a judgment declaring that a licensed real estate broker who "habitually prepared deeds, deeds of trust, mortgages, and deeds of release ... in connection with the sale of real estate" was illegally practicing law. *See* 186 Va. at 31. The broker admitted that it did the above activities "as an incident to the sale of real estate and the making of loans" and that the broker would continue to do the same until otherwise instructed by a court of competent jurisdiction. *Id.* at 32.

The *Jones & Robins* Court framed the issue to be "whether the preparation of deeds, deeds of trust, mortgages, and deeds of release by duly licensed real estate brokers, in connection with the sale of real estate or the closing of real estate loans negotiated through the brokers' offices, constitutes the practice of law within this jurisdiction." *Id.*

Like Complainants in this case, the Commonwealth in *Jones & Robins* argued that "no person other than a lawyer may draw or prepare a deed, will, lease, contract or other instrument by which the legal rights of another to property are transferred, secured, or otherwise affected; and that the preparation of such papers for another implies the possession and requires the use of legal knowledge or skill." *Id.* at 34. The broker countered that the instruments preparation was "incident to the regular course of conducting a licensed business" and, thus, was not the practice of law under the definition previously published. *Id.* at 35.

Agreeing with both parties that the decision rested on a construction of the language of the definition of the practice of law, the Court clarified the language of paragraph 2, saying that laymen are prohibited from "preparing legal instruments of any character other than ... notices or contracts incident to the regular course of his business." *Id.* (internal quotations and emphasis omitted).

After noting that the business of real estate brokers is to negotiate sales and purchases of land, the Court mentioned advice given by the Committee on the Integration of the Virginia State Bar regarding the regulation of the

practice of law relevant to real estate brokers. *Id.* at 37, 44. The committee advised that real estate brokers should be permitted to prepare "simple contracts of sale, options, leases, etc., and to prohibit [brokers] from preparing legal instruments whereby the legal title to property passes from the seller to the purchaser." *Id.* at 44.

The court found that deeds, deeds of trust, mortgages, and deeds of release were more than ordinary contracts, but were "muniments of title," and their creation was the practice of law. *Id.* at 36, 43. Thus, the Court remanded and directed the trial court to enjoin the brokerage corporation from creating such documents. *Id.* at 44.

Turning to the statute at issue, the completion of form documents, at first glance, appears harmless, especially when done according to the instructions of the parties. However, where the parties request language which would effect title and the parties themselves rely on the agent to translate their desires into the correct legal language for such transfer, the agent becomes more than a mere scrivener. In such a situation, the completion of form documents becomes the practice of law. The creation of other instruments, to the extent they are not simple contracts of sale, options, leases, or other documents incidental to the regular course of business for conducting the type of licensed business at issue would also be the practice of law. The result is that the language of the statute is, again, too vague for a facial challenge, and the court needs more concrete facts to determine whether activity seemingly authorized under the statute is the practice of law.

Neither of the final activities allowed under the statute, handling or arranging for the recording of documents and reporting federal tax information for the real estate sale to the IRS, necessarily involves the practice of law. Both activities are clerical tasks which do not involve the creation of legal instruments or the need for legal skill or advice.

In summary, a person or entity licensed and acting under CRESPA necessarily practices law whenever he or she determines that all closing documents conform to the parties contract requirements or ascertains for the purposes of closing that the lenders instructions have been satisfied. Having found that two of the activities enumerated under the Act are the practice of law, the court's inquiry turns to whether the General Assembly has usurped the power of the Supreme Court violating the separation of powers set in place by the Virginia Constitution and rendering the Enactment invalid.

## The Challenge That CRESPA Violates
## the Separation of Powers of the Virginia Constitution

VAREAL argues that the inherent power of the Court to define the practice of law cannot be preempted by the General Assembly by statutory fiat. Defendant and *Amicus* argue that the practice of law is properly regulated by both the Court and the General Assembly and that CRESPA, if deemed to regulate the practice of law, is a valid exercise of the Legislature's police power in regulating a profession.

The Constitution of Virginia includes the Separation of Powers Doctrine in Article I, § 5, and in Article III, § 1, the latter of which states:

> *Departments to be distinct.* — The legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time ....

The Supreme Court articulated the appropriate considerations when deciding whether these constitutional provisions have been violated.

> When we speak ... of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link or dependence, the one upon the other, in the slightest degree. The *true meaning is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments*; and that such exercise of the whole would subvert the principles of a free constitution.

*Baliles v. Mazur*, 224 Va. 462, 472 (1982), *quoting* Story's *Constitution*, 393, 395 (5th ed.) *and citing Winchester & Strasburg R.R. Co. v. Commonwealth*, 106 Va. 264, 270 (1906), (alteration in original) (emphasis added); *see also Tross v. Commonwealth*, 21 Va. App. 362, 378 (1995); *Taylor v. Worrell Enterprises, Inc.*, 242 Va. 219, 221-22 (1991) (plurality).

As regards regulation of the practice of law, some overlap between the legislative and judicial branches is tolerable. *See Baliles*, 224 Va. at 472. In regulating professions generally, the Legislature validly exercises its police power if the exercise is related to the public's health, safety, morals or welfare.

*See F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 96-97 (1952); *see also State Milk Comm'n*, 191 Va. 1; *Goe v. Gifford*, 168 Va. 497 (1937). Concurrently, the Judiciary may exercise its inherent power to regulate the legal profession in the interest of maintaining integrity and confidence in the justice system. R. of S. Ct. of Va., Pt. 6, § 1; *see also Davis v. Sexton*, 211 Va. 410, 412-13 (1970).

Relative to the Legislature's broad power to regulate professions, the scope of the power of the Judiciary to regulate professions is extremely limited. However, the Court's power to regulate within that scope must necessarily displace the powers of the other branches if the judicial power has meaning at all. Thus, in light of the standard described in *Baliles*, legislation is invalid where it so intrudes into the sphere of the Judiciary that the enactment preempts the Court's power to define and regulate the practice of law. *See generally* 224 Va. 462.

The regulatory interest is fundamental to the Judicial Branch of government, especially where those persons offering legal advice and representation to citizens are cloaked with an air of legal expertise because of a license from the Commonwealth. Considering the importance of regulation of unauthorized practice to the Judicial Branch, the Supreme Court's treatment of Unauthorized Practice of Law Advisory Opinion No. 183 becomes most consequential.

### *Impact of the Supreme Court's Approval of Unauthorized Practice of Law Advisory Opinion No. 183*

Though CRESPA may be such an intolerable intrusion to the extent that the Act attempts to arrogate the Court's inherent power to define the practice of law and to investigate and regulate individuals who engage in the unauthorized practice of law, the Supreme Court has already spoken on the issue. The Court's preamble of Unauthorized Practice of Law Advisory Opinion No. 183, as modified, approves the opinion, withholding its effective date and including the following modification:

> The Committee issued this opinion before the General Assembly enacted the Consumer Real Estate Settlement Protection Act (CRESPA) (Va. Code §§ 6.1-2.19 to 6.1-2.29) authorizing certain qualified nonlawyers (licensed real estate brokers, financial institutions, title insurance companies, and title agents) to provide escrow, closing, and settlement services in transactions involving the purchase and financing of real estate containing not more than four

residential dwelling units. In light of the passage of that legislation, this opinion has no application to nonlawyer settlement agents duly qualified and registered under CRESPA conducting closings covered under the Act.

In its qualified approval, the Court has exempted nonlawyers who are licensed under CRESPA from an attack under the law as set forth in UPL Opinion No. 183. It follows that where UPL Opinion No. 183 defines certain activities as the practice of law and CRESPA states that nonlawyers may participate in the same activities, the Court's exemption shields CRESPA licensed persons from allegations that they are engaging in the unauthorized practice of law when they act under CRESPA authority. As a subordinate tribunal, the court is bound by the Supreme Court's approval of UPL Opinion No. 183 and cannot grant Complainants the relief they seek in this suit.

It is, therefore ordered that Complainant William E. Fears' Amended Petition for Declaratory Judgment and Co-complainant Virginia Real Estate Attorneys League's (VAREAL) Motion for Summary Judgment are denied and the Commonwealth of Virginia's Motion for Summary Judgment is granted, and judgment is entered for the Commonwealth. The Commonwealth's other motions and pleas need not be addressed because they are obviated by this ruling.