## 𝔖taunton

ROBERT Y. BUTTON, ATTORNEY GENERAL OF VIRGINIA v. SIDNEY C.
DAY, JR., COMPTROLLER OF VIRGINIA.

September 11, 1963.

Record No. 5550.

Present, All the Justices.

*James H. Simmonds, Special Assistant* (*Robert Y. Button, Attorney General; Kenneth C. Patty, Assistant Attorney General*, on brief), for the petitioner.

*Edward L. Breeden, Jr.* (*Robert R. MacMillan; James H. Flippen, Jr.; Breeden, Howard & MacMillen*, on brief), for the respondent.

*John C. Parker* (*John S. Battle; John C. Parker; Samuel H. Williams*, on brief), intervenors for the Virginia State Bar.

*J. Sloan Kuykendall* (*Hannibal N. Joyce; Curry Carter; John B. Boatwright, Sr.; Paul M. Shuford; John Alexander; Wayt B. Timberlake, Jr.; George E. Haw, Sr.; J. Sloan Kuykendall*, on brief), intervenors as members of the Virginia State Bar.

BUCHANAN, J., delivered the opinion of the court.

The Attorney General filed in this court, under § 8-714 of the Code, his petition for a writ of mandamus to require the Comptroller to issue warrants on the State Treasurer for the payment of amounts authorized by the proper official of the Virginia State Bar, pursuant to the Rules for Integration of the Virginia State Bar. The Comptroller had notified the Attorney General by letter that he entertained

doubt as to the authority of the Bar to engage in certain activities and hence would decline to issue warrants for payments therefor until there was a final adjudication on the subject by this court.

The respondent Comptroller, by counsel appointed by this court to represent him, filed his answer and there were presented by these pleadings for adjudication the principal questions whether the State Bar was authorized (1) to participate in a program of continuing legal education; (2) to publish the *Virginia Bar News;* and (3) to employ counsel and prosecute suits to enjoin the unauthorized practice of law. Other questions to be dealt with proceed from these three issues.

The evidence consisted of written documents received in evidence in accordance with the stipulation of the petitioner and the respondent by their counsel. Briefs were filed by the petitioner and by the respondent and also by intervenors on the side of the petitioner and intervenors on the side of the respondent.

By an Act approved April 1, 1938, Acts 1938, ch. 410, p. 771, the General Assembly enacted a statute known as the State Bar Act (now, as amended, Code, 1958 Repl. Vol., §§ 54-48 through 54-52.1). It provided that the Supreme Court of Appeals of Virginia may, from time to time, "prescribe, adopt, promulgate and amend rules and regulations" with respect to the matters set out therein. It is copied in full in the margin.[1]

---

[1] Section 1. The Supreme Court of Appeals of Virginia may, from time to time, prescribe, adopt, promulgate and amend rules and regulations,

(a) Defining the practice of law.

(b) Prescribing a code of ethics governing the professional conduct of attorneys at law and a code of judicial ethics.

(c) Prescribing procedure for disciplining, suspending, and disbarring attorneys at law.

(d) Organizing and governing an association to be known as the Virginia State Bar composed of the attorneys at law of this State, to act as an administrative agency of the Supreme Court of Appeals of Virginia for the purpose of investigating and reporting the violation of such rules and regulations as are adopted by the Supreme Court of Appeals under this act to, a court of competent jurisdiction for such proceedings as may be necessary, and requiring all persons practicing law in this State to be members thereof in good standing.

(e) Fixing a schedule of fees to be paid by members of the Virginia State Bar for the purpose of administering this act, and providing for the collection and disbursement of such fees, provided, however, that the annual fees to be paid by any attorney at law shall not exceed the sum of five dollars ($5.00) [Now $10.00, Acts 1956, ch. 256]. No person shall receive any compensation out of the funds collected under the provisions of this act for services performed in and about the administration of this act if at the time of the performance of such services he is a regular employee of the Commonwealth of Virginia, nor shall any of the funds derived hereunder be

By an Act approved March 28, 1940 (Acts 1940, ch. 314, p. 508, Code, 1958 Repl. Vol., § 54-52), the General Assembly amended and re-enacted the 1938 Act to add thereto Section 3, as follows:

"Section 3. There is hereby established as a special fund in the State treasury a fund to be known as the State Bar Fund. All fees collected from the members of the Virginia State Bar as provided in section one of this act shall be paid into the State treasury immediately upon collection and credited to the State Bar Fund. All moneys so paid into the said fund are hereby appropriated to the Virginia State Bar for the purpose of administering the provisions of this act. All disbursements from the said fund shall be made by the State Treasurer upon warrants of the Comptroller issued upon vouchers signed by such officer or officers of the Virginia State Bar as may be authorized, by or in accordance with rules and regulations prescribed, adopted and promulgated by the Supreme Court of Appeals of Virginia, so to do."

No other change was made in the 1938 Act except some rearrangement of paragraphs.[2]

Following the passage of the 1938 Act this court, at its April 1938 session, appointed a Committee on the Integration of the Virginia Bar, composed of Justices Browning, Gregory and Hudgins, which reported to the court the result of its work on September 8, 1938. The report stated that in view of the vital interest of all practitioners in the subject, the active assistance of lawyers from all over the State was sought in preparation of the rules and regulations by which the

---

devoted to publishing decisions of the Supreme Court of Appeals of Virginia or to law magazines or to buying any such publications.

Provided, however, that the Supreme Court of Appeals shall not adopt or promulgate rules or regulations prescribing a code of ethics governing the professional conduct of attorneys at law, which shall be inconsistent with any statute; nor * * which shall limit or supersede the jurisdiction of the courts to deal with the discipline of attorneys at law, as now or hereafter provided by law; nor * * which will provide for any additional method for the trial of attorneys in disbarment or suspension proceedings except those now provided for by statute, and in no case shall an attorney be tried for the violation of any rule or regulation adopted under this act except by a court of competent jurisdiction.

[2] By an Act approved September 29, 1956 (Acts 1956 Ex. Sess., ch. 47, p. 50), the Virginia State Bar, through its governing body, was authorized to promulgate rules and regulations governing the function and operation of legal aid societies; and by an Act approved March 8, 1958 (Acts 1958, ch. 253, p. 301), § 3-a was added, making non-compliance with the rules and regulations adopted under § 1 of the 1956 Act a misdemeanor and fixing penalities; and providing that in addition to such penalties an injunction shall lie to prevent violations of the act or rule or regulations adopted thereunder. An Act approved March 31, 1960 (Acts 1960, ch. 459, p. 720), provides

profession would be governed; that consequently it was arranged that the members of the Bar of each of the thirty-four judicial circuits should elect one member to represent them in drafting such rules and regulations. To these were added by the court's committee with approval of the court six members of the Bar from the State at large, making a total of forty, who met, organized and appointed committees to study various phases of the subject.

Thereafter the committee of forty met and adopted a complete draft of the proposed rules and regulations which, reported the court's committee, were the result of the conclusions of forty outstanding lawyers representing every section of the State, many of whom had been studying the integration of the Bar for a number of years. The court's committee recommended the adoption of the report "with a few changes listed on the following pages," which will be referred to below.

The report of the court's committee, with the report of the committee of forty lawyers attached, was received and filed September 8, 1938, and an order was entered on that date directing that the said reports be released for publication in the newspapers and that 2500 copies thereof be printed for distribution; and leave was granted to any person interested to file written objections to or criticisms of said reports. Later, by order of October 21, 1938, said rules and regulations for integration of the Virginia State Bar were adopted, prescribed and promulgated, and 2500 copies were ordered printed for distribution. They were printed also in 171 Va. beginning at page xvii, and amendments thereof in subsequent volumes. The amendments are not material to the present controversy.

The Rules for Integration of the Virginia State Bar so adopted and promulgated are divided into four sections. Section I defines the practice of law; Section II contains the Canons of Professional Ethics; Section III the Canons of Judicial Ethics, and Section IV provides for the organization and government of the Bar. We are concerned now only with certain provisions of Section IV.

Section IV, after erecting the structure of the Bar, provides in Rule 5 that the powers of the Virginia State Bar shall be exercised by a Council composed of forty members, to be elected and appointed, and to meet in the manner prescribed. Rule 9 provides that

that an attorney who fails for two successive years to pay the annual fees provided for shall thereby forfeit his license to practice law in this State, with provisions for notice and reinstatement.

the Council "shall have general charge of the administration of the affairs of the Virginia State Bar, and shall have the power" to do the things set out in paragraphs (a) through (k). These include in (f) the power to employ such assistants as it deems necessary and to fix their duties and compensation and the compensation of the Secretary-Treasurer; and (g) to make allocations of funds within the amounts available; and in (k) the following:

"The Council may, at its discretion or upon a written request of the majority of the members of the Virginia State Bar or pursuant to a resolution duly adopted at a regular or called meeting, exercise the necessary powers:

"To cultivate and advance the science of jurisprudence;

"To promote reform in the law and in judicial procedure;

"To facilitate the administration of justice;

"To uphold and elevate the standards of honor, of integrity and of courtesy in the legal profession;

"To encourage higher and better education for membership in the profession;

"To promote a spirit of cordiality and brotherhood among the members of the Virginia State Bar; and

"To perform all duties imposed by law."

This Rule 9 (k) was recommended to the court by its committee to be added to the report of the committee of forty and was adopted and promulgated by the court as part of the Rules. It is the focus of the present controversy.

The respondent contends, first, that this court intended the Rules for the Integration of the State Bar to be based solely on the State Bar Act, as evidenced by the fact that the court did not act until after the 1938 Act of the General Assembly was passed, and that the Rules follow the sequence of the items covered by the Act. On the other hand, the petitioner argues that this court did not intend the Rules to be based solely on the Bar Act, but had the inherent power to integrate the Bar without regard to any limitations or restrictions in the Act.

The best evidence of what the court intended is what the court did. Death has now sealed the lips of the three members of the court who served so faithfully as its committee. But one of them, Justice Hudgins, later Chief Justice, and probably the leading spirit in the undertaking, afterwards wrote in the case of *Commonwealth* v. *Jones & Robins, Inc.*, 186 Va. 30, 36, 41 S. E. 2d 720, 724:

"The Supreme Court of Appeals of Virginia, pursuant to its inherent power and chapter 410 of the Acts of 1938 (Acts 1938, p. 771), adopted rules and regulations, defining the practice of law and prescribing a code of ethics governing professional conduct of attorneys, a code of judicial ethics and other measures, by which the Bar of this State became integrated."

Before that, in *Norfolk & Portsmouth Bar Ass'n* v. *Drewry*, 161 Va. 833, 836, 172 S. E. 282, 283, this court said that attorneys at law were court officers and may be disciplined. "This is an inherent power. * * * This power, since the judiciary is an independent branch of government, is not controlled by statute."

Again, in *Richmond Ass'n of Credit Men, Inc.* v. *Bar Ass'n*, 167 Va. 327, 335, 189 S. E. 153, 157, it was said that "the courts have the inherent power, apart from statute, to inquire into the conduct of any person—whether an individual, a lay agency, or a corporation— to determine whether he or it is usurping the functions of an officer of the court and illegally engaging in the practice of law and to put an end to such unauthorized practice where found to exist." See also *Harris* v. *Harris*, 166 Va. 351, 355, 186 S. E. 29, 30; *Carter* v. *Commonwealth*, 96 Va. 791, 816, 32 S. E. 780, 785.

The Supreme Courts of at least five jurisdictions have exercised inherent power to integrate their bars by rule alone.[3] In eight others integration has been accomplished by rule and statute together,[4] and in fifteen it has been by statute alone.[5]

The question was explored at length in *Integration of Bar Case*, 244 Wis. 8, 40-41, 11 N.W. 2d 604, 619, where the conclusion was reached that "The power to integrate the Bar is an incident to the exercise of the judicial power which is vested by the Constitution of the State of Wisconsin in the Supreme Court, circuit courts, courts of probate and justices of the peace." Cf. Virginia Constitution §§ 39, 87. See also *Petition of Florida State Bar Ass'n*, (Fla.) 40 So. 2d 902, 905; *Petition for Integration of Bar of Minnesota*, 216 Minn. 195, 199, 12 N.W. 2d 515, 518; *In Re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265; Annotations, 114 A.L.R. 861, 151 A.L.R. 617.

The 1938 Act of the General Assembly served at least as the

---

[3] Florida, Missouri, Nebraska, Oklahoma, Virgin Islands.

[4] Kentucky, Louisiana, Michigan, Texas, Virginia, West Virginia, Wisconsin, Wyoming.

[5] Alabama, Alaska, Arizona, Arkansas, California, Idaho, Mississsppi, Nevada, New Mexico, North Carolina, North Dakota, Oregon, Puerto Rico, South Dakota, Utah.

impetus for the action of the court. It imposed no mandatory duty. It gave legislative approval of integrating the Bar, and left to the court the matter of adopting and promulgating rules and regulations defining the practice of law, prescribing codes of ethics and disciplining procedures, organizing and governing the Bar, to act as an administrative agency of the court for the purpose as set out in paragraph (d) *supra* of the Act, and fixing a schedule of fees.

It is not necessary now to assert inherent power in the court to integrate the Bar independently of or contrary to legislative action because there has been legislative action on the subject. It is a subject in which the judicial department and the legislative department of the State government have a common interest, and in which they should work in harmony. Each is a separate and distinct department of government and each is cautioned not to exercise the powers properly belonging to the other. Va. Const., § 39. Members of the Bar are officers of the court and the court is primarily concerned that they should possess the integrity, the learning and the skill essential to the proper and efficient administration of justice. That is a field in which the judiciary has a special and peculiar interest and it is the department of government to which the administration of justice is ultimately confided. The legislative department has a similar concern in behalf of the public interest and welfare. It is a growing concern as evidenced by the increased education and fitness requirements of Acts 1960, ch. 379, p. 568, as compared with Acts 1922, ch. 389, p. 654. As said in *Integration of Bar Case, supra,* 244 Wis. at 52, 11 N.W. 2d at 624:

"While the Legislature has no constitutional power to compel the court to act or, if it acts, to act in a particular way in the discharge of the judicial function, it may nevertheless, with propriety and in the exercise of its power and the discharge of its duty, declare itself upon questions relating to the general welfare which includes the integration of the Bar. * *."

It is obvious that Rule 9 (k) of Section IV of the Rules goes beyond the activity described in paragraph (d), *supra,* the policing part of the Bar Act, but we think it does not go beyond the spirit and purpose of that Act. This belief finds support in the fact that after the Rules containing paragraph 9 (k) had been printed and widely distributed in 1938, the General Assembly in 1940 amended and re-enacted the 1938 Bar Act by Acts 1940, ch. 314, p. 508, establishing the State Bar Fund in the State treasury and appropriating

said fund to the State Bar for the purpose of administering the provisions of the Act, and without in anywise changing or affecting the provisions of paragraph (k) of Rule 9; nor did it do so by the subsequent Acts of 1956, 1958 and 1960, referred to above; and this despite the fact that the budgets submitted by the State Bar to the General Assembly as basis for the appropriation of funds have indicated from time to time activities plainly beyond the policing activity described in paragraph (d) of the Act. Additionally, had it been the intendment of the legislature that the activities of the State Bar should be restricted solely to the policing provision of paragraph (d), it should not have felt it necessary to prohibit specifically the publication of court decisions and law magazines.

Independently, however, of what we consider to have been the purposes of the Bar Act, we do not doubt that the court possessed the inherent power, as asserted in *Commonwealth* v. *Jones & Robins, Inc., supra,* 186 Va. at 36, 41 S. E. 2d at 724, to include in its rules for the integration of the Bar the provisions of Rule 9 (k) of Section IV thereof, and we so hold. We turn then to consider whether the activities of the State Bar, herein challenged, are permitted by Rule 9 (k).

█ Rule 9 provides, as stated, that the Council shall have general charge of the administration of the affairs of the State Bar, and paragraph (k) thereof provides that it may exercise the necessary powers, *inter alia,* to cultivate and advance the science of jurisprudence, to facilitate the administration of justice, and to encourage higher and better education for membership in the profession. Petitioner relies on these for authority in the Council to participate in a program of

### Continuing Legal Education.

This program was arranged by a duly appointed Joint Committee of the Virginia State Bar and the Virginia State Bar Association, the latter being the voluntary association of State lawyers. This committee was given the responsibility of arranging all continuing legal education projects of interested organizations and authorized to employ a full-time or part-time director, to receive appropriations from the Virginia State Bar and Virginia State Bar Association, and to collect registration fees and other income resulting from its operations. The Committee employed Peter C. Manson, a professor of law at the University of Virginia, as director. From November 1960 through

December 1962 the Committee has conducted seven programs or institutes at various places in the State on various legal subjects at which there were total registrations of 2,799. To finance the activities of the Committee, over and above anticipated collections from registrants, the State Bar and the State Bar Association have each made appropriations as follows for the years ended June 30: 1961—$6,250; 1962—$3,400; 1963 (requested)—$2,975.

Programs of continuing legal education are not a novelty. Similar programs, with paid directors, are sponsored or endorsed by at least eight of the States having integrated or organized Bars.[6] As said by the Wisconsin court in *Lathrop* v. *Donohue*, 10 Wis. 2d 230, 246, 102 N.W. 2d 404, 413, and quoted by the Supreme Court in 367 U.S. 820, 839, 81 S.Ct. 1826, 1836, 6 L.ed. 2d 1191, 1203:

"Post-graduate education of lawyers is in the public interest because it promotes the competency of lawyers to handle the legal matters entrusted to them by those of the general public who employ them."

The Virginia program tends to advance the science of jurisprudence and facilitate the administration of justice. It is clearly within the scope and purpose of paragraph 9 (k) of Section IV of the Rules.

Respondent suggests that if Rule 9 (k) permits a program of continuing legal education it could as well authorize the operation of a law school. His alarm may be quieted by the fact that the State Bar must live within its means, and the limit of its means under the Bar Act is determined by this court within a further limit fixed by the General Assembly.

### *Virginia Bar News*

This is a monthly publication aptly referred to as a newsletter. Before its publication began in 1953 the then President of the State Bar wrote to the then Attorney General describing the publication and inquiring whether the State Bar was authorized to prepare and distribute it to its members. The Attorney General in his reply quoted the provisions of Rule 9 (k) and said: "These powers are sufficiently broad, in my opinion, to authorize the preparation and distribution to the members of the Bar the newsletter or bulletin which you describe." We agree with that opinion.

The respondent states in his brief that as in the case of continuing legal education "the valuable services performed by the Virginia Bar

---

[6] Alabama, Arizona, California, Michigan, Missouri, Oregon, West Virginia, Wisconsin.

News are herein conceded." But, he says, it is a "law magazine" and the Bar Act, *supra,* specifically provides that none of the Bar funds shall be devoted "to publishing * * law magazines."

The number of the pages of the publication is now usually eight instead of the four originally contemplated, due to increase in the matters of interest to the Bar and "the occasional presenting of significant opinions of the Attorney General, State Corporation Commission, and trial courts, which are not otherwise given general circulation." The publication as originally planned was not a law magazine within the meaning of the Bar Act and the additional pages have not made it so. Its publication lies within the powers granted by Rule 9 (k) and is not prohibited by the statute.

■        *Salaries of Director and Editors*

Of concern is the objection made by respondent to paying out of the Bar Fund the salaries of the director of the continuing legal education program and of the editors of the *Virginia Bar News.* The Bar Act, paragraph (e), *supra,* provides:

"No person shall receive any compensation out of the State Bar Fund for services performed in and about the administration of this act if at the time of the performance of such services he is a regular employee of the Commonwealth of Virginia, * *."

The Bar Rules, adopted by this court, contain the same provision in practically identical language in Rule 12 of Section IV.

Through the cooperation of the University of Virginia Law School, Mr. Peter C. Manson was employed by the University with the understanding that approximately one-half of his time would be occupied as a professor of law and that approximately one-half would be devoted to the activities of the Joint Committee. Likewise, one-half of his salary was to be borne by the University and the other half by the Joint Committee. His employment by the Joint Committee began July 1, 1960, and has continued since that date. His full salary has been paid by the University of Virginia and is shown in its budget. The Joint Committee has in turn reimbursed the University for the fiscal years ended June 30, 1961 and 1962, for one-half the salary plus sums for a part-time secretary.

Petitioner argues that the payments to Professor Manson were not within the prohibition of the Act and the Rules because his services were performed for the Joint Committee, and Bar funds were not paid directly to him; that he was not a "regular" but only a "part-

time" employee of the Commonwealth; that his services were not performed "in and about the administration" of the Act or Rules; and that his services were not in and about the administration of the government so as to make him an employee of the Commonwealth.

We hold that these attempted distinctions are not tenable; that Professor Manson at the time of the performance of his services was a regular employee of the Commonwealth, and that the payment of salary to him out of Bar funds is forbidden by the Bar Act and by the Bar Rules.

Similarly, salary payments to the editors of the *Virginia Bar News* who were at the time regular employees of the Commonwealth also fall within the prohibition of the Act and of the Rules. These editors have been Mr. Hardy C. Dillard and Mr. Daniel J. Meador, law professors of the University of Virginia, and Miss Frances Farmer, law librarian of the University of Virginia. Each of them has been paid a salary of $100 per month out of the Bar funds, and each by virtue of employment at the University of Virginia at the time of payment was a regular employee of the Commonwealth, to whom the Act and the Rule forbid the payment of compensation out of the Bar Fund.

It follows that payments of salaries to these regular employees of the Commonwealth must be discontinued.

### Fees to Special Counsel for Prosecuting Suits to Enjoin the Unauthorized Practice of Law

Fifteen of such suits have been instituted by the Virginia State Bar, all of which resulted in the entry of injunction orders except one, which has not been concluded. In these cases costs in the sum of $2,390.41 and attorneys fees in the sum of $11,150 have been paid from the Bar funds. The respondent contends that such suits should have been instituted and prosecuted only by the Attorney General and that the expenditure of Bar funds for that purpose is unauthorized.

Complaints of unauthorized practice are usually handled in this manner: The District Committees of the State Bar, appointed pursuant to Rule 13 of the Bar Rules, make investigation of complaints of unauthorized practice. If the committee concludes that a layman is engaging in unauthorized practice, effort is made to have him discontinue such practice. If the effort fails the matter is referred to the Committee on Unauthorized Practice of Law, a standing committee of the State Bar, with recommendation that suit be entered. If

suit is authorized the Attorney General is requested to represent the Bar. If he cannot do so then special counsel is employed by the Committee with the understanding that his fee for services will be subject to the approval of the Attorney General.

Rule 13 (d) of the Bar Rules provides that it shall be the duty of each District Committee and its members to receive complaints of unauthorized practice of law, and the Committee "shall thereupon make such investigation as it deems appropriate, and, in its discretion, report the matter to the Council, for such action as it may deem advisable in the premises."

The Bar Act, paragraph (d), *supra*, refers to "the purpose of investigating and reporting" the violation of rules and regulations adopted by this court "to a court of competent jurisdiction for such proceedings as may be necessary."

By House Joint Resolution No. 50 (Acts 1958, p. 1102) the Virginia State Bar was directed to review the findings of and evidence before two committees of the General Assembly concerning "the instigation and conduct of legal proceedings by those who were not parties thereto," and to summon and examine such individuals as the Bar deems necessary, "all to the end that the Virginia State Bar can take such action as may be necessary to punish such persons, if any, who have been guilty of the unethical and unauthorized practice of law or either of them."

Section 54-44 of the Code provides: "If any person shall practice law without being duly authorized or licensed, he shall be guilty of a misdemeanor."

In *Commonwealth* v. *Jones & Robins, Inc., supra*, 186 Va. at 32, 41 S. E. 2d at 722, we said: "The Virginia State Bar is an organization fully authorized to institute suits and other proceedings it deems necessary to enforce the rules and regulations of the integrated bar."

In the Virginia State Bar's "Budget Exhibit" accompanying its budget requests to the General Assembly for the 1962-64 biennium it was explained that the request for $15,000 for the first year and $20,000 for the second year included attorneys' fees and "contemplates employing full-time counsel to prosecute cases of the unauthorized practice of law and to act as legal advisor to the ten District Committees in their investigations of complaints against lawyers and in matters of unauthorized practice of law." The Appropriations Act of 1962, Acts 1962, p. 1281, Item 16, appropriated to the Virginia State Bar sums of approximately the same total amounts as in the budget requests.

We hold that the payment from Bar funds of reasonable counsel fees for the prosecution of suits on behalf of the Virginia State Bar to enjoin the unauthorized practice of law is within the authority of the Bar Rules and the Bar Act; but such payments shall be limited to attorneys specially employed for that purpose and only in cases in which special counsel is requested by the Attorney General.

## Constitutionality of Activities

Finally, respondent asserts that if Rule 9 (k) is grounded only on the inherent power of the court and authorizes the expenditure of Bar funds for the activities herein discussed, the court is exercising legislative functions in violation of Section 39 of the Virginia Constitution, which requires the separation of powers among the three branches of government, and in violation of the provision of Section 186 of the Constitution that "No money shall be paid out of the State treasury except in pursuance of appropriations made by law * *." It seems sufficient to say in this regard that the State Bar Fund is composed of fees paid by the practicing lawyers into a Special Fund in the State treasury as directed by statute, and said fund is appropriated by the General Assembly to the Virginia State Bar and used by it for purposes authorized by the Bar Act or the Bar Rules, or both, except as herein indicated. These procedures do not violate Section 39 or Section 186, or any other section, of the Virginia Constitution, so far as we are able to see. Cf. *Lathrop* v. *Donohue, supra,* 367 U. S. 820, 81 S. Ct. 1826, 6 L. ed. 2d 1191; *Petition of Florida State Bar Ass'n, supra,* (Fla.) 40 So. 2d 902, 905; *In Re Pate,* Mo. App., 107 S.W. 2d 157.

The petition for writ of mandamus is granted and the writ shall issue in accordance with the rulings herein made.

*Writ awarded.*