COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

**PUBLISHED**

JAQUAN RAMONE BROWN

v.      Record No. 0722-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE FRANK K. FRIEDMAN
SEPTEMBER 6, 2022

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Jennifer T. Stanton, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

On January 6, 2020, Jaquan Brown ("appellant") was indicted in the Circuit Court for the City of Danville for multiple felonies. He was arrested on these indictments on January 9, 2020, and was held without bond until his trial. In the months after his indictment, COVID-19 swept across the Commonwealth. On August 28, 2020, appellant moved to dismiss his charges, alleging a speedy trial violation. The trial court denied this motion.

Appellant was tried alongside a co-defendant, A.F., at a two-day jury trial in May 2021. At the close of the trial, A.F. was acquitted of all charges. Appellant was convicted of statutory burglary, robbery, and use of a firearm in the commission of robbery, in violation of Code §§ 18.2-90, 18.2-58, and 18.2-53.1, respectively. At a sentencing hearing in June 2021, the trial court imposed the jury's recommended sentence of twenty-eight years in prison and a $5,000 fine. Appellant assigns error to the trial court's denial of his speedy trial claims and to its rejection of his challenge to the sufficiency of the evidence to uphold the guilty verdict. He

further asserts that the declaration of a judicial emergency constituted an improper usurpation of power that violated the separation of powers under Article I, Section 5 and Article III, Section 1 of the Constitution of Virginia.

Declaration of Judicial Emergency

On March 16, 2020, the Supreme Court of Virginia declared a judicial emergency based on the COVID-19 pandemic and issued an order suspending all non-emergency court proceedings and stating that "all deadlines are hereby tolled and extended, pursuant to Va. Code § 17.1-330(D)" for a period of twenty-one days. Order Declaring a Judicial Emergency in Response to COVID-19 Emergency 1-2 (Va. Mar. 16, 2020).[1]

Additional emergency orders were issued by the Supreme Court every twenty-one days after the initial order. On May 1, 2020, the Supreme Court issued a clarification order which stated that the prior emergency orders had tolled the statutory deadlines of the Speedy Trial Act in Code § 19.2-243. EDO of May 1, 2020, at 2. The Supreme Court's emergency orders following this May 1, 2020 order stated that "[a]s provided in the Clarification Order, deadlines imposed by the Speedy Trial Act, Va. Code § 19.2-243, are tolled during the ongoing Period of Judicial Emergency." *See, e.g.*, EDO of May 6, 2020, at 5.

On May 6, 2020, the Supreme Court ordered that all jury trials be "suspended and shall be continued until further notice." *Id.* On June 22, 2020, the Supreme Court ordered that no jury

---

[1] The Supreme Court's emergency orders regarding the COVID-19 pandemic will be referred to throughout the rest of this opinion as "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'"). The text of each of these orders is available on the Supreme Court's website. *See* https://www.vacourts.gov/news/items/covid/scv_emergency_orders.pdf. Notably, Code § 17.1-330(E) states: "In the event of a communicable disease of public health threat, as defined in [Code] § 44-146.16, a majority of the justices of the Supreme Court may extend such order for the duration of the threat."

trials would be held in any locality until the Supreme Court had approved a plan for the safe resumption of juries. EDO of June 22, 2020, at 5-7.

On August 28, 2020, while these orders were still in effect, appellant filed a motion to dismiss his charges, alleging that the orders violated his statutory right to a speedy trial and that he had been held in jail longer than allowed by Code § 19.2-243. He filed a separate motion entitled "Motion to Continue Case, Under Protest," which "assert[ed] speedy trial on both constitutional and statutory bases in this case."[2] At the hearing on the motions, the trial court judge noted that the jurisdiction's plan for resuming jury trials had been submitted to the Supreme Court and remained pending. Appellant's motions were denied, and his jury trial was ultimately held on May 17 and 18, 2021.

Timeline for Calculation of Speedy Trial

Appellant was indicted on January 6, 2020. He was arrested on the indictments three days later, on January 9, 2020, and was held without bond. His case was scheduled to be set at docket call on February 25, 2020. However, appellant agreed to continue the case to the following docket call on April 21, 2020.[3]

On March 16, 2020, the Supreme Court of Virginia declared a judicial emergency and suspended all non-emergency court proceedings. EDO of Mar. 16, 2020, at 1-2. On May 6, 2020, the Supreme Court ordered that all jury trials were "suspended and shall be continued until further notice." EDO of May 6, 2020, at 5.

---

[2] The motion further observed that at that time "no delay has taken place of such length that it is likely any court would conclude a constitutional speedy trial violation has taken place."

[3] The continuance order states that appellant "fully understands that a motion by the defendant or attorney for the defendant or a motion for continuance agreed to by the defendant or attorney for the defendant is chargeable against the defendant for purposes of speedy trial rights."

On August 28, 2020, appellant moved to dismiss his charges, alleging a statutory speedy trial violation. This motion acknowledged that February 25 through April 21, 2020, "does not count toward calculation of statutory speedy trial." On the same day, appellant filed his "Motion to Continue Case, Under Protest," which "assert[ed] speedy trial on both constitutional and statutory bases."

On September 4, 2020, the trial court denied the motions. On appeal, appellant asserts that the periods from January 9 through February 25, 2020, and April 21 through September 4, 2020, are chargeable against the Commonwealth. Appellant's jury trial was ultimately held on May 17 and 18, 2021.[4]

## Evidence at Trial[5]

On the evening of September 19, 2018, E.W. was alone in the Danville, Virginia home she shared with her boyfriend and children. E.W. took a bath and smoked marijuana. While in the bathroom, she heard a couple of loud bangs, so she wrapped herself in a towel and began to run to the back door, believing her boyfriend needed to be let inside. As she entered the dining room, she saw "guns in [her] face." Two men, both holding guns, pushed E.W. down the hallway and into her bedroom. One of the men, later identified by E.W. as appellant, had a white t-shirt wrapped around his head to hide his features; however, E.W. could see that he had "really dark skin" and dreads.

The men asked E.W. if she had money in the house, and appellant held E.W. at gunpoint in the bedroom for more than twenty minutes while the other man searched through her closet

---

[4] Appellant does not assert the Commonwealth was responsible for the period of time he waited to go to trial after the trial court denied his motion to dismiss.

[5] In accordance with familiar principles of appellate review, we recite the facts in the light most favorable to the Commonwealth, as the prevailing party at trial. *Commonwealth v. Herring*, 288 Va. 59, 66 (2014).

and other parts of the house.  Appellant took E.W.'s jewelry and gun from her dresser. Appellant also smoked part of a cigarette, then passed it to E.W. and told her to smoke it. Instead of smoking it, E.W. placed it on her bedroom floor.

About a minute later, the other man reentered the bedroom and appellant left the room. While appellant was out of the bedroom, the other man raped E.W., then walked her at gunpoint to the bathroom and told her to wash herself.  Eventually, E.W. was able to slip out of the bathroom and exit the front door of the house.  She then sought help from a neighbor.  Multiple items were taken from E.W.'s home, including electronic devices, clothing, and her gun.

E.W. went to the hospital, where she met with detectives.  At the hospital, she recalled that both men were continuously changing their voices while interacting with her, as though they were trying to disguise their voices.  That night E.W. told the police that she did not know the men who broke in.  She also told them that she wears glasses and that without her glasses she is "blind" and "literally . . . can't see nothing."  E.W. did not have her glasses on throughout the encounter at her home.  She also told police that although she had only seen two men, it was possible that there was a third person in her home that evening.

In January 2019, E.W. received a phone call from an acquaintance who was incarcerated in Lynchburg.  That person "told [E.W.] a personal thing that happened to [E.W.] that nobody should have known about."  E.W. had not told her friends or family about the rape, nor was she identified by name in news stories about the incident.  Based on this phone conversation, E.W. realized that she knew her attackers.  She then reported to law enforcement that appellant and A.F. were the men who broke into her house.

In October 2019, approximately thirteen months after the incident, E.W. looked at a photo lineup and identified appellant as one of the men who had broken in.  E.W. stated that appellant had previously come to her home about six times but had never been inside her

bedroom before. She also stated that the voice of the man who gave her the cigarette was similar to the voice she had previously heard from appellant. She testified that she was "very sure" about her identification of appellant.

On the night of the crime, as part of the investigation into the incident, a cigarette butt was collected from E.W.'s bedroom floor, in the general location she had described placing the cigarette. That butt was tested for DNA evidence. It matched appellant's DNA.[6]

In November 2019, appellant spoke with law enforcement about the incident. He told them that he had never been to Danville, did not know anyone in Danville, and had never been to E.W.'s house. Appellant testified at trial; he denied ever having seen E.W. prior to the trial. He denied ever having been to Danville or to E.W.'s house. He stated that he had "no explanation" for why a cigarette butt with his DNA on it would have been found inside her house, other than that somebody had placed it there and was using him "as a scapegoat."

At the close of a two-day jury trial, appellant was convicted of robbery, use of a firearm in the commission of robbery, and armed burglary. A.F. was acquitted of all charges.

Analysis

I. The Declaration of a Judicial Emergency, and the Enforcement of this Declaration, Did Not Violate the Separation of Powers.

"Constitutional issues present questions of law reviewed *de novo* on appeal." *Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022). "To the extent such review involves underlying factual findings, those findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Id.* (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

---

[6] The DNA profile from the cigarette butt was compared to a DNA profile from a buccal swab from appellant. The results indicated that appellant could not "be eliminated as a contributor of the DNA profile" from the cigarette butt and that "[t]he probability of randomly selecting an unrelated individual with a DNA profile matching that developed from the cigarette butt . . . is 1 in greater than 7.2 billion (which is approximately the world population) in the Caucasian, African American, and Hispanic populations."

A. The Separation of Powers Doctrine Ensures that No Branch of Government Assumes a Role Properly Belonging to Another Branch.

Appellant complains that the Supreme Court violated the separation of powers provision by "overriding" his *constitutional* right to a speedy trial. As a preliminary matter, we note that the legislative branch issues statutes, and the other branches enforce and interpret these statutes. Code § 17.1-330 is no exception to that general constitutional scheme. A separation of powers issue arises when one branch of government assumes a role properly belonging to one of the others. Here, the Supreme Court did not violate the separation of powers by enforcing the provisions of an already-existing statute. *See, e.g.*, *Etheridge v. Med. Ctr. Hosps.*, 237 Va. 87, 101 (1989) ("[W]ere a court to ignore the legislatively-determined remedy and enter an award in excess of the permitted amount, the court would invade the province of the legislature.").

B. The Judiciary Has Been Granted the Power to Declare a Judicial Emergency, Including the Tolling or Suspension of Deadlines Fixed by Statutes, Rules, or Court Orders.

Code § 17.1-330 gives the Supreme Court the power to declare a judicial emergency and specifies that an order declaring a judicial emergency "may suspend, toll, extend, or otherwise grant relief from deadlines, time schedules, or filing requirements imposed by otherwise applicable statutes, rules, or court orders in any court processes and proceedings." Appellant argues that Code § 17.1-330 permits only the tolling of statutory deadlines, not the overriding of "an individual's federal or state constitutional rights such as those embodied in § 19.2-243." Appellant contends that when the Supreme Court of Virginia tolled the running of speedy trial deadlines, it exceeded its constitutional authority by "interven[ing] in matters that are the province of the legislature." Appellant asserts that this act violated the constitutionally mandated separation of powers.

The legislative, executive, and judicial branches of the Commonwealth should "be separate and distinct," "so that none exercise the powers properly belonging to the others." Va.

Const. art. I, § 5; *id.* art. III, § 1. "The judiciary's inherent power derives from its existence as an institution entrusted with the function of rendering judgment. . . . The court's inherent power has been recognized to extend to matters 'incident to the exercise of the judicial power which is vested' in it." *Moreau v. Fuller*, 276 Va. 127, 136 (2008) (quoting *Button v. Day*, 204 Va. 547, 553 (1963)).

The plain language of Code § 17.1-330 gives the Supreme Court the power to declare a judicial emergency and to toll "deadlines, time schedules, or filing requirements *imposed by otherwise applicable statutes, rules, or court orders* in any court processes and proceedings" in the event of a disaster—including a "communicable disease of public health threat"—that "substantially endangers or impedes the operation of a court, the ability of persons to avail themselves of the court, or the ability of litigants or others to have access to the court or to meet schedules or time deadlines imposed by court order, rule, or statute." Code §§ 17.1-330, 44-146.16 (emphasis added); *see Ali*, 75 Va. App. at 30-31.

This statutory language clearly shows a legislative intent to give the Supreme Court the ability to toll any and all statutory deadlines in the event of a qualifying disaster. If the General Assembly intended to exclude the Speedy Trial Act from the purview of Code § 17.1-330, it would have done so. "When analyzing a statute, we must assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Alger v. Commonwealth*, 40 Va. App. 89, 92-93 (2003) (quoting *Toliver v. Commonwealth*, 38 Va. App. 27, 32 (2002)), *aff'd*, 267 Va. 255 (2004); *see also Jacks v. Commonwealth*, 74 Va. App. 783, 789-90 (2022) (*en banc*) (finding that the Supreme Court's emergency orders properly tolled "all case-related deadlines" other than discovery deadlines pursuant to its authority under Code § 17.1-330).

Here, Code § 17.1-330 operated exactly as intended. COVID-19 was declared a communicable disease constituting a public health threat by the State Health Commissioner in February 2020. *See* M. Norman Oliver, State Health Comm'r, Va. Dep't of Pub. Health, *Declaration of the 2019 Novel Coronavirus Infection as a Communicable Disease of Public Health Threat for Virginia* (Feb. 7, 2020),

https://www.vdh.virginia.gov/content/uploads/sites/134/2021/07/VDH-Declaration-of-Public-Health-Threat_nCoV-Final_maw_lp.pdf. "'Disaster' as used in the judicial emergency statute includes various 'natural disaster[s]' such as 'any communicable disease [that presents a] public health threat.'" *Ali*, 75 Va. App. at 31 (quoting Code § 44-146.16). The pandemic rendered trials potentially unsafe for witnesses, trial participants, and court personnel for an extended period of time. *See, e.g.*, *Commonwealth v. Lougee*, 147 N.E.3d 464, 468-69 (Mass. 2020) (upholding emergency orders tolling statutory speedy trial in Massachusetts on the basis that "immediate and uniform action across the entire court system was needed to prevent the spread of the coronavirus and to avoid the inefficiencies and inconsistencies that would have resulted if trial judges had to make a separate decision and findings in each case"). To contend with this "communicable disease of public health threat" and "disaster," the Supreme Court proclaimed a judicial emergency precisely as Code § 17.1-330 contemplated. *See Ali*, 75 Va. App. at 31.

C. <u>The Judicial Emergency Declarations Were Crafted so that Statutory Speedy Trial Deadlines Were Tolled, But Constitutional Speedy Trial Limits Were Not Tolled.</u>

The Supreme Court had the authority under Code § 17.1-330 to toll *statutory* speedy trial limits, which is precisely what its orders tolled. The Supreme Court explicitly stated that the judicial emergency orders tolled "the running of any *statutory* speedy trial period applicable to criminal prosecutions." EDO of May 1, 2020, at 2 (emphasis added). While the statutory speedy trial deadline was tolled, the Supreme Court's emergency orders restricted court proceedings "subject to a defendant's right to a speedy trial." EDO of Mar. 16, 2020, at 2. This language

referred to a defendant's *constitutional* right to a speedy trial. EDO of May 1, 2020, at 2. Thus, while appellant's statutory speedy trial deadline was tolled due to the COVID-19 emergency, his constitutional speedy trial rights remained in effect and were not suspended. *See Ali*, 75 Va. App. at 32.

The tolling of appellant's *statutory* speedy trial deadline under Code § 17.1-330 did not exceed the Court's authority or violate the separation of powers provision. Appellant's constitutional right to a speedy trial was unaffected by the Supreme Court's orders—and the orders themselves openly recognized this fact. EDO of Mar. 16, 2020, at 2; EDO of May 6, 2020, at 3, 5; *Ali*, 75 Va. App. at 32. Thus, the Supreme Court's emergency orders did not overstep any constitutional constraints nor violate the separation of powers provision.

II. <u>Appellant's Statutory Speedy Trial Rights and Constitutional Speedy Trial Rights Were Not Violated.</u>

Appellant alleges that "[t]he trial court erred in denying Mr. Brown's motion to dismiss the indictments against him where his speedy trial rights were violated." "On appeal, a statutory speedy trial challenge presents a mixed question of law and fact. The Court reviews legal questions *de novo*, while giving deference to the trial court's factual findings." *Young v. Commonwealth*, 297 Va. 443, 450 (2019) (quoting *Harris v. Commonwealth*, 266 Va. 28, 32 (2003)).

For questions of statutory interpretation, this Court must "view the facts in the light most favorable to the prevailing party below," but will "review *de novo* the scope and application of the statute under which the defendant was convicted." *Blake v. Commonwealth*, 288 Va. 375, 381 (2014). "[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent." *Turner v. Commonwealth*, 226 Va. 456, 459 (1983). Furthermore, "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Id.*

- 10 -

A. Appellant's Statutory Speedy Trial Deadlines Were Tolled by the Emergency Orders and Therefore No Statutory Speedy Trial Violation Occurred.

Virginia's speedy trial statute, Code § 19.2-243, provides that if an adult defendant "is held continuously in custody" for a felony offense, he "shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months" from the date the indictment "is found against the accused" or the date of his arrest, whichever is later. The five-month period, however, is "not absolute" and is subject to tolling. *Ali*, 75 Va. App. at 30 (quoting *Young*, 297 Va. at 451).

Appellant's *statutory* speedy trial deadline was properly tolled by the Supreme Court's orders under Code § 17.1-330. *Id.* Appellant was indicted for these charges on January 6, 2020, was arrested on January 9, 2020, and was then held continuously thereafter without bond. His case was scheduled for docket call on February 25, 2020, but he agreed to continue the case to the April docket call. In doing so, he expressly agreed in the court's order that this delay could not be charged against the Commonwealth. On March 16, 2020, the Supreme Court of Virginia declared a pandemic-related judicial emergency and suspended all non-emergency court proceedings. EDO of Mar. 16, 2020, at 1-2. While appellant alleges that the periods of January 9 through February 25, 2020, and April 21 through September 4, 2020, are delays chargeable against the Commonwealth, the delay coming after March 16, 2020, was tolled under the Supreme Court's emergency orders for purposes of appellant's statutory Speedy Trial Act claim.

Under Code § 19.2-243, assuming no other exceptions applied, appellant was entitled to be tried within five months of his arrest. Here, however, appellant's statutory speedy trial deadline was tolled by the Supreme Court's emergency orders from March 16, 2020, through the end of the period of time contested by appellant, September 4, 2020. Therefore, the delay at issue was less than two months; appellant has plainly failed to establish a statutory speedy trial violation.

- 11 -

## B. No Constitutional Speedy Trial Violation Occurred.

### 1. Statutory and Constitutional Speedy Trial Rights are Related, but Distinct.

Appellant argues that "[s]peedy trial provisions are . . . encompassed within the Sixth Amendment to the United States Constitution and made applicable to the States through the Fourteenth Amendment" and that a defendant's constitutional right to a speedy trial "has been supplemented by Code §§ 19.2-241 and 19.2-243, and held to be a legislative interpretation of what constitutes speedy trial." Appellant concludes that "[o]ne's statutory speedy trial rights are so intertwined with one's constitutional speedy trial rights that they cannot be separated."

Contrary to appellant's argument, the statutory right to a speedy trial and the constitutional right to a speedy trial are separate, though related, rights that utilize different frameworks and focus on different elements. *See*, *e.g.*, *Ali*, 75 Va. App. 16; *Wallace v. Commonwealth*, 65 Va. App. 80 (2015); *Sheard v. Commonwealth*, 12 Va. App. 227, 230-31 (1991). Virginia's Speedy Trial Act provides a specific time limit within which an accused must be tried, absent tolling or other statutory exceptions.[7] The constitutional right to a speedy trial, by contrast, is governed by a balancing test that is not tied inextricably to calendar dates. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). In *Barker*, the United States Supreme Court provided a list of four factors for a court to consider when analyzing a constitutional speedy trial claim: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "On appeal, a defendant must establish that 'on balance,' the factors 'weigh in his favor.'" *Ali*, 75 Va. App. at 35 (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

---

[7] If not for the tolling of statutory speedy trial deadlines, and assuming that no other statutory exceptions applied, under Code § 19.2-243 appellant should have been tried "within five months" from the date of his arrest on these indictments.

2. <u>Appellant Did Not Satisfy the *Barker* Test to Establish a Constitutional Speedy Trial Violation.</u>

Appellant asserted a general violation of his constitutional right to a speedy trial. Assuming without deciding that he has preserved this objection with respect to the *Barker* analysis, his claims of a constitutional speedy trial breach are unsupported by this record. The first factor requiring consideration under the *Barker* test is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. A delay that "approaches one year" has been found to trigger a *Barker* inquiry. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).[8] Appellant was arrested on these charges on January 9, 2020. He was tried at a two-day jury trial on May 17 and 18, 2021. However, appellant contests only the time from his arrest (January 9, 2020) until the day the trial court denied his motion to dismiss (September 4, 2020).[9]

Moreover, appellant concedes that the period from February 25, 2020, through April 21, 2020, was attributable to a defense-approved motion for a continuance. Assuming without deciding that appellant's calculations are correct, this leaves a delay of approximately six months (January 9 through February 25, 2020, and April 21 through September 4, 2020) that, under appellant's analysis, could have been attributable to the Commonwealth. Appellant has failed to show under *Barker* that the delay was presumptively prejudicial. *See Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994); *Doggett*, 505 U.S. at 652 n.1.

---

[8] Appellant argues that because he was held longer than the statutory deadline provided under Code § 19.2-243, his constitutional rights to a speedy trial were violated. He suggests that the shorter statutory period should be incorporated into the constitutional analysis. As will be discussed *infra*, this argument improperly conflates Virginia's statutory deadline with the *Barker* constitutional analysis.

[9] Appellant did not renew his motion to dismiss closer to trial or otherwise contest this post-motion period in the trial court, and he also does not challenge it on appeal. Consequently, we do not consider it. *See* Rules 5A:18, 5A:20; *Montgomery v. Commonwealth*, 56 Va. App. 695, 705-06 (2010).

We note that the remaining *Barker* factors, when balanced together, similarly do not tilt in appellant's favor. The second factor to consider is the reason for the delay. Assuming without deciding that the time from January 9 until February 25, 2020, and from April 21 until September 4, 2020, was attributable to the Commonwealth, this Court must determine what portion of this delay was justifiable. According to *Barker*,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.

Here, the time from January 9 until February 25, 2020, was a delay occurring "in the ordinary course of the administration of justice." *See Ali*, 75 Va. App. at 52-53. The delay occurring from April 21 until September 4, 2020, however, was a result of the COVID-19 pandemic. "While it is true that 'even in a pandemic, the Constitution cannot be put away and forgotten,' the United States Supreme Court has recognized that '[s]temming the spread of COVID-19 is unquestionably a compelling [governmental] interest.'" *Id.* at 43 (quoting *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67-68 (2020) (per curiam)). A pandemic-related delay is "valid, unavoidable, and outside the Commonwealth's control." *Id.* at 45. Therefore, the delay from April 21 until September 4, 2020, was justifiable.

The third *Barker* factor requires us to examine whether appellant asserted his right to a speedy trial. Using a balancing test approach, "a court is allowed 'to weigh the frequency and force of the [objection to delay] as opposed to attaching significant weight to a purely *pro forma* objection.'" *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987) (quoting *Barker*, 407 U.S. at 529), *quoted with approval in Ali*, 75 Va. App. at 46. Here, appellant's own "Motion to

Continue Case, Under Protest" conceded that "no delay has taken place of such length that it is likely any court would conclude a constitutional speedy trial violation has taken place." Additionally, after the trial court denied the motion to dismiss, appellant did not renew the motion closer to trial, nor did he otherwise contest the post-motion period in the trial court or on appeal. Therefore, we do not "attach[] significant weight" to appellant's *pro forma* objection. *Rogers*, 5 Va. App. at 347; *Barker*, 407 U.S. at 529.

As to the final *Barker* factor, appellant has failed to demonstrate any prejudice he may have suffered as a result of the delay. The *Barker* Court noted three specific interests that the speedy trial provisions are designed to protect: preventing "oppressive pretrial incarceration," "minimiz[ing] anxiety and concern of the accused," and "limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

Here, the period from April 21 until September 4, 2020, was due to the COVID-19 pandemic; the Commonwealth "was not in any way at fault" in causing this portion of the delay. *Ali*, 75 Va. App. at 48. Therefore, appellant was required to prove either "specific prejudice" with regard to the third interest (the impairment of his defense) or "some degree of prejudice" with regard to the first two interests (oppressive pretrial incarceration and the accused's anxiety and concern). *Id.* (citing *Doggett*, 505 U.S. at 654, 656). In *Ali*, this Court did not reach the question of "whether the heightened standard of specific prejudice applies to the first two interests" because the appellant in that case had failed to show even "some degree of prejudice." *Id.* at 48 n.16. Similarly, we need not reach this question here because appellant has failed to demonstrate any prejudice regarding the above interests.

When considering all four *Barker* factors, which are "related" and "must be considered together with such other circumstances as may be relevant," appellant has failed to show that his constitutional right to a speedy trial was violated. *Barker*, 407 U.S. at 533.

- 15 -

### 3. Appellant's Attempt to Merge Code § 19.2-243's Deadlines Into the *Barker* Test is Not Supported by Precedent.

Appellant seeks to inject Virginia's statutory time limits for speedy trial into a constitutional analysis based on his claim that his statutory speedy trial rights "are so intertwined with [his] constitutional speedy trial rights that they cannot be separated." Under this novel analysis, appellant concludes that his constitutional speedy trial rights were violated because he was not tried within Code § 19.2-243's five-month statutory period and no tolling occurred to affect his *constitutional* claim. Thus, the crux of appellant's constitutional speedy trial argument is an attempt to import the shorter, five-month statutory speedy trial deadline of Code § 19.2-243 into the constitutional speedy trial analysis that would otherwise require a delay "approaching one year" to trigger a violation. *Barker*, 407 U.S. at 530; *Doggett*, 505 U.S. at 652 n.1.

This attempt to circumvent or rewrite the *Barker* test fails because appellant's fundamental premise is wrong: his statutory and constitutional rights are not so inextricably intertwined as to be inseparable. As discussed above, statutory and constitutional speedy trial rights are separate rights. Extensive Virginia case law reveals that statutory speedy trial claims and constitutional speedy trial claims are not merged into a single test. *See Ali*, 75 Va. App. at 31-52 (providing analyses for constitutional and statutory claims using separate, established tests and time periods); *Wallace*, 65 Va. App. at 89-100 (same); *Shavin v. Commonwealth*, 17 Va. App. 256, 267-70 (1993) (same).[10] Indeed, the *Barker* decision itself notes the "slippery"

---

[10] While the statutory right to a speedy trial is separate from the constitutional right to a speedy trial, we note that Virginia's *constitutional* right to a speedy trial is "coextensive" with federal constitutional rights. As this Court has observed: "Virginia's constitutional speedy trial right is coextensive with the federal right. Accordingly, such claims may be analyzed 'without distinction.'" *Ali*, 75 Va. App. at 34 (quoting *Holliday v. Commonwealth*, 3 Va. App. 612, 615 (1987)). Some of our prior cases describe Code § 19.2-243 as the "statutory embodiment" of the constitutional right to a speedy trial. *See, e.g.*, *Clark v. Commonwealth*, 4 Va. App. 3, 5 (1987); *Shavin*, 17 Va. App. at 267. That does not mean that the statutory test for speedy trial is the same as the *Barker* test. *See Bunton v. Commonwealth*, 6 Va. App. 557, 558 (1988) (noting Code § 19.2-243 "augment[s]" Sixth Amendment rights (citing *Holliday*, 3 Va. App. at 615)).

nature of speedy trial analysis and specifically rejects the idea that a rigid, legislatively-fixed length of time should govern a constitutional speedy trial claim. Instead, the *Barker* Court opted for the balancing test which prevails today. *Barker*, 407 U.S. at 522-23.[11]

Under the *Barker* four-factor balancing test, appellant has not established a violation of his constitutional right to a speedy trial. His attempt to inject the deadlines of Code § 19.2-243 into the constitutional analysis runs counter to established precedent. The trial court did not err in rejecting appellant's claim that a constitutional speedy trial violation occurred.

4. <u>The Trial Court was not Required to Make Detailed Findings of Fact with Respect to the Motions to Dismiss.</u>

Appellant argues on appeal that the trial court erred by failing to make specific findings of fact related to the emergency and his motion to dismiss. Assuming without deciding that this objection is preserved, appellant's position is untenable.[12] Under Code § 17.1-330, the court that declares a judicial emergency must make certain findings. That requirement, however, does not apply to the circuit court here—the trial court was simply applying the Supreme Court's declaration of a judicial emergency to appellant's speedy trial claim. *See Lougee*, 147 N.E.3d at 473 (the trial court did not declare the emergency, but merely applied Massachusetts Supreme Court's declaration). "Absent a statutory mandate, such as that applicable in habeas corpus proceedings, . . . a trial court is not required to give findings of fact and conclusions of law."

---

[11] The constitutional right to a speedy trial differs from its statutory counterpart in notable respects. For example, whether an accused's constitutional right to a speedy trial has been infringed calls forth "a difficult and sensitive balancing process in which the court examines on an *ad hoc* basis the conduct of both the state and the accused which led to a delay in prosecution." *Jefferson v. Commonwealth*, 23 Va. App. 652, 658 (1996). One of the central factors in the balancing process is prejudice to the accused. By contrast, the statutory speedy trial inquiry does not require any showing of prejudice. *See Fowlkes v. Commonwealth*, 218 Va. 763, 771 n.5 (1978).

[12] *See Abdo v. Commonwealth*, 64 Va. App. 734, 742 n.3 (2015) (declining to consider the Commonwealth's Rule 5A:18 waiver argument and instead addressing the merits claim because it provided the best and narrowest ground for decision).

*Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982); *see Farley v. Farley*, 9 Va. App. 326, 329 (1990).  Here, the trial court properly articulated the basis of its ruling and the court was not obligated to explain the precise weight it afforded each factor or piece of evidence.

### III.  The Evidence was Sufficient to Support the Verdict.

Appellant alleges that the trial judge "erred by denying the motion to strike the charges where the evidence was insufficient to establish Mr. Brown as the perpetrator."  The standard of review on a claim of sufficiency of the evidence requires that the evidence be considered in the light most favorable to the Commonwealth, as the prevailing party below, and it allows the judgment of the trial court to be reversed only when its decision "is plainly wrong or without evidence to support it."  *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)).  Furthermore, the appellate courts must "discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence."  *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact."  *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015).  "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'"  *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)).

Appellant alleges only that the Commonwealth failed to prove his identity as one of the perpetrators, not that it failed to prove any other element of his charges.  Contrary to appellant's claim, the record amply supported the fact-finder's conclusion that appellant was one of the

perpetrators—in particular, E.W. testified that she was "very sure" about her identification of appellant and the DNA evidence recovered from the cigarette butt that was found in E.W.'s room buttressed this identification.

E.W. admitted that she has poor eyesight, was not wearing her glasses at the time of the robbery, and had been smoking marijuana on the evening in question. However, she also testified that appellant held her at gunpoint in her bedroom for approximately twenty minutes, during which time she could see "his dreads," his "really dark skin," and his eyes. She also stated that her assailant's voice was "similar" to appellant's voice. While she did not recognize appellant at the time of the incident, she later picked him out of a photo lineup and repeatedly identified him in court as one of the perpetrators.

E.W.'s identification of appellant was bolstered by the fact that appellant's DNA was found on a cigarette butt in E.W.'s bedroom, in the same area she described to law enforcement. Appellant testified that he had never been to Danville and that he had never seen E.W. prior to the court proceedings. The only explanation he offered for the DNA evidence was that some unknown person was setting him up. The DNA evidence offered a significant likelihood that appellant was one of the intruders in E.W.'s bedroom and that appellant's testimony to the contrary was unreliable. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998).

The trial court's rejection of appellant's sufficiency challenge was consistent with the evidence, and we will not disturb the verdict on appeal.

## IV. Conclusion

The trial court did not err in denying appellant's motion to dismiss his charges based on a speedy trial violation. The COVID-19 pandemic falls within the definition of a "natural

disaster" under Code § 44-146.16, and the Supreme Court acted within the permissible bounds of its authority under Code § 17.1-330 when it tolled the statutory speedy trial deadlines. Because appellant's statutory speedy trial deadline was properly tolled, his statutory right to a speedy trial was not violated. Moreover, no improper usurpation of power occurred when the Supreme Court declared a judicial emergency based on the COVID-19 pandemic.

Appellant's constitutional speedy trial arguments are similarly without merit. First, his constitutional speedy trial rights were not tolled by the Supreme Court's emergency orders. Appellant's assertion of a constitutional violation was not met under a balancing of the *Barker* factors. Similarly, appellant's attempt to import a five-month deadline into the *Barker* analysis runs contrary to long-standing Virginia jurisprudence.

Finally, the fact-finder was not plainly wrong or without evidence to support its finding that appellant was one of the perpetrators of these crimes. The trial court properly denied appellant's sufficiency challenge. E.W. offered credible testimony identifying appellant as one of the intruders. E.W. testified that she was "very sure" of her identification of appellant. The DNA evidence strongly supported her testimony.

For all of these reasons, the rulings of the trial court are affirmed.

*Affirmed.*